1   M. Jeffery Kallis, SBN 190028
    **THE LAW FIRM OF KALLIS & ASSOCIATES, P.C.**
2   333 W. San Carlos St., 8th Floor
    San Jose, CA 95110
3   Telephone: (408) 971-4655
    Facsimile: (408) 971-4644
4   M_J_Kallis @Kallislaw.org

5   Andrew V. Stearns, SBN 164849
    Steven M. Berki, SBN 245426
6   Gaurav D. Sharma, SBN 269123
    **BUSTAMANTE, O'HARA & GAGLIASSO, P.C.**
7   333 W. San Carlos St., 8th Floor
    San Jose, California  95110
8   Telephone: (408) 977-1911
    Facsimile: (408) 977-0746
9   astearns@boglawyers.com
    sberki@boglawyers.com
10
    Attorneys for Plaintiffs
11  Russell Cole and Stephanie Oberg

12

13              **UNITED STATES DISTRICT COURT**

14         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15                    **SAN JOSE DIVISION**

16  **RUSSELL COLE,** et al.,          )   Case No. C-08-05017 PVT
                                       )
17              Plaintiffs,            )
                                       )
18  vs.                                )   **PLAINTIFFS' MOTION FOR PARTIAL**
                                       )   **SUMMARY JUDGMENT.**
19  **CITY OF SUNNYVALE,** et al.,     )   [*Federal Rule of Civil Procedure § 56*].
                                       )
20              Defendants.            )   Hearing Date:  June 17, 2011
                                       )   District Judge: Hon. Ronald Whyte
21                                     )   Time:  9:00 a.m.
                                       )   Dept.: Courtroom 6, 4th Floor
22  ─────────────────────────────────     Complaint Filed: November 4, 2008

23  //

24  //

25  //

26  //

27  //

28

## **TABLE OF CONTENTS**

Page No.

I. INTRODUCTION...................................................................................................1

II. FACTUAL HISTORY.........................................................................................1

    a.   *PHONE CALLS TO SUNNYVALE DEPARTMENT*
        *OF PUBLIC SAFTEY DISPATCH*................................................................1

    b.   *ARRIVAL AT PLAINTIFFS'' RESIDENCE AND SURVEILLANCE*.......................2

    c.   *DETENTION IN GARAGE OF PLAINTIFFS' RESIDENCE*.................................2

    d.   *SEARCH OF PLAINTIFFS' RESIDENCE FOR PERSONS*..................................3

    e.   *SEARCH OF PLAINTIFFS' RESIDENCE FOR WEAPONS*.................................4

III. PROCEDURAL ISSUES....................................................................................4

IV. STANDARD OF MOTIONS FOR SUMMARY JUDGMENT – RULE 56................5

    a.   *EVIDENTIARY STANDARD AT SUMMARY JUDGMENT STAGE*......................6

    b.   *PURPOSE OF RULE 56 SUMMARY JUDGMENT MOTION*.............................6

V. APPLICABLE STATUTES AND CASES...............................................................7

    a.   *CALIFORNIA WELFARE AND INSTITUTIONS CODE 5150*.........................7

    b.   *CALIFORNIA WELFARE AND INSTITUTIONS CODE 8102*.........................8

    c.   *PEOPLE V. SWIEG (TRAVIS)*...................................................................9

    d.   *CALIFORNIA LEGISLATURE AMENDMENT OF WARRANT ALLOWANCES*........9

VI. VIOLATION OF FOURTH AMENDMENT BY SEIZURE OF PLAINTIFF
    STEPHANIE OBERG (FIRST SEARCH)...............................................................10

    a.   *WELFARE/COMMUNITY CARETAKER EXCEPTION TO THE WARRANT REQUIREMENT*.............12

    b.   *EMERGENCY AID EXCEPTION TO THE WARRANT REQUIREMENT*..............12

VII. VIOLATION OF FOURTH AMENDMENT BY SEARCHING
    PLAINTIFFS RESIDENCE (SECOND SEARCH)...................................................13

    a.   *EXCEPTIONS TO THE WARRANT REQUIREMENT*......................................14

    b.   *ENTRY INTO THE HOME FOR THE PURPOSES OF §8102*............................15

    c.   *MISTAKE OF LAW AS TO CALIFORNIA WELFARE AND INSTITUTIONS CODE §8102*...............15

VIII. VIOLATION OF THE CALIFORNIA BANE ACT ................................................................17

IX.   FALSE IMPRISONMENT AND UNLAWFUL DETENTION
      (STEPHANIE OBERG).........................................................................................................18

X.    TRESPASS (STEPHANIE COLE AND RUSSELL COLE)...............................................19

XI.   DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.............................19

XII.  CONCLUSION.........................................................................................................................20

1

## TABLE OF POINTS AND AUTHORITIES

2

Page No.

3

<u>CASES</u>

4

5 *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)................................................................6

6 *Asgari v. City of Los Angeles,* 15 Cal. 4th 744 (1997)............................................................18

7 *Austin B. v. Escondido Union School Dist.,*149 Cal. App. 4th 860 (Ct. App. 2007).............18

*Beck v. Ohio,* 379 U.S. 89 (1964)..........................................................................................18

8

9 *Brendlin v. California,* 551 U.S. 249 (2007).........................................................................10

*Camera v. Municipal Court of the City and County of San Francisco,*
10      387 U.S. 523 (1967)......................................................................................................10

11 *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).......................................................................5

12 *Church of Christ in Hollywood v. Superior Court,* 99 Cal. App. 4th 1244 (2002)...............19

13 *Clouthier v. County of Contra Costa,* 591 F.3d 1232 (9th Cir. 2010).....................................6

14 *Cole v. Doe* (N.D. Cal. 2005) 387 F.Supp.2d 1084...............................................................18

15 *Dominguez-Curry v. Nevada Transp. Dept.,* 424 F.3d 1027 (9th Cir. 2005).........................7

16 *Eaton v. Sutter Coast Hospital,* 80 Cal. App. 4th 485 (2000)................................................18

17 *Florida v. Royer,* 460 U.S. 491 (1983)..................................................................................11

18 *Garcia v. County of Merced,* 2011 U.S. App. LEXIS 9184 (9th Cir. 2007)...........................19

19 *Georgia v. Randolph,* 547 U.S. 103 (2006)...........................................................................15

20 *Gregory v. County of Hawaii,* 523 F.3d 1103 (9th Cir. 2008)................................................6

21 *Hopkins v. Bonvicino,* 573 F.3d 752 (9th Cir. 2009) ..........................................................14

22 *Huppert v. City of Pittsburg,* 574 F.3d 696, 701 (9th Cir. 2009)............................................5

23 *Johnson v. County of Contra Costa,* 2010 U.S. Dist. LEXIS 92020......................................19

24 *Liberal v. Estrada,* 632 F.3d 1064 (9th Cir. 2011).........................................................11, 20

25 *Maryland v. Garrison,* 480 U.S. 79 (1987)...........................................................................15

26 *McSherry v. City of Long Beach,* 584 F.3d 1129 (9th Cir. 2010)............................................7

27 *Michigan v. Tyler,* 436 U.S. 499 (1978)...............................................................................13

28

*Millender v. County of Los Angeles,* 2010 U.S. App. LEXIS 17673 (2010)...........................14

*Mincey v. Arizona,* 437 U.S. 385 (1978)..........................................................................12

*Ogborn v. City of Lancaster,* 101 Cal. App. 4th 448 (Cal. Ct. App. 2002)...........................20

*Payton v. New York,* 445 U.S. 573 (1980).........................................................................14

*Pearson v. Callahan*........................................................................................................19

*People v. Craft,* 23 Cal. 4th 978 (2000)............................................................................18

*People v. Swieg (Travis)*...............................................................................................9, 10

*People v. Wells,* 38 Cal. 4th 1078 (2006).........................................................................15

*Ralph's Grocery Co. v. United Food and Commercial Workers Union Local 8,*
113 Cal. Rptr. 3d 88 (2010)..................................................................................19

*Reed v. Hoy,* 909 F.2d 324 fn5 (9th Cir. 1989)..................................................................15

*Rupf v. Yan,* 85 Cal. App. 4th 411 (Cal. App. 1st Dist. 2000).............................................16

*Rutledge v. County of Sonoma,* 2008 U.S. Dist. LEXIS 51313 (2008) *10..........................18

*Silva v. City of San Leandro*...........................................................................................14

*Saucier v. Katz,* 533 U.S. 194 (2001)..............................................................................20

*United States v. Arvizu,* 538 U.S. 266 (2002)...................................................................15

*United States v. Chanthasouxat,* 342 F.3d 1271 (11th cir. 2003)........................................16

*United States v. Coplin,* 463 F.3d 96 (1st Cir. 2006).........................................................16

*United States v. Good,* 780 F.2d 773 (9th Cir. 1986).........................................................14

*United States v. Lopez,* 482 F.3d 1067 (9th Cir. 2007)......................................................19

*United States v. Lopez-Soto,* 205 F.3d 1101 (9th Cir. 2000)..............................................15

*United States v. Kapp,* 564 F.3d 1103 (9th Cir. 2008).........................................................6

*United States v. McDonald,* 453 F.3d 958 (7th Cir. 2006)..................................................16

*United States v. Rodriguez-Morales,* 929 F.2d 780 (1st Cir. 1991).....................................12

*United States v. Torres-Sanchez,* 83 F.3d 1123 (9th Cir. 1996).........................................11

*United States v. Stafford,* 416 F.3d 1068 (9th Cir. 2005)...................................................14

*U.S. v. Davis,* 290 F.3d 1239 (10th Cir. 2002)..................................................................13

*U.S. Snipe,* 515 F.3d 947 (9th Cir. 2008)..............................................................13

*Van Asdale v. Int'l Game Tech.,* 577 F.3d 989 (9th Cir. 2009)...............................6

*Venegas v. County of Los Angeles,* 32 Cal. 4th 820 (2004)............................................18, 20

*Way v. County of Ventura,* 445 F.3d 1157 (9th Cir. 2006)....................................15

*Welsch v. Wisconsin,* 466 U.S. 740 (1984).........................................................13

*Zobmondo Entm't, LLC v. Falls Media, LLC,* 602 F.3d 1108 (9th Cir. 2010)........................6

FEDERAL STATUTES

28 U.S.C. § 1983...........................................................................................4, 5

Federal Rule of Civil Procedure 56(c).......................................................................5

STATE STATUTES

California Civil Code § 52.1(b) (Bane Act)........................................1, 4, 5, 7, 16, 17, 18, 20

California Health and Welfare Code § 5150...............................................3, 4, 7, 8, 9, 16, 17

California Penal Code § 1524...............................................................................8, 9

California Welfare and Institutions Code § 8100....................................................8

California Welfare and Institutions Code § 8102..............................4, 8, 9, 14, 15, 16, 17

California Welfare and Institutions Code § 8103...................................................8

OTHER

California Assembly Committee on Public Safety (Assembly Bill 532)......................9, 10

Fourth Amendment to the U.S. Constitution...............................................................15, 16

# I.   INTRODUCTION.

Plaintiffs, Russell Cole and Stephanie Oberg, hereby submit the following Motion for Partial Summary Judgment (hereinafter referred to as the "*Motion*") in connection with plaintiffs Third Amended Complaint filed on August 6, 2009. [ECF Docket No. 56]. Plaintiff's *Motion* demonstrates that even when viewing the facts in the light most favorable to defendants, judgment as a matter of law is proper.

In particular, plaintiffs are entitled to partial summary judgment for the following reasons: (1) defendants violated plaintiff Stephanie Oberg's right to be free from unreasonable detention and warrantless seizure; (2) defendants violated plaintiffs' Fourth Amendment rights to be free from a warrantless search of their home; (3) the California Supreme Court and California Legislature have already certified that officers cannot search absent a warrant even in circumstances involving an unstable suspect; (4) defendants violated the California Bane Act; and (5) defendants are not entitled to qualified immunity or any other statutory immunity.

# II.   FACTUAL HISTORY[1].

### a.  *PHONE CALLS TO SUNNYVALE DEPARTMENT OF PUBLIC SAFETY DISPATCH.*

On November 5, 2007, around approximately 11:00 p.m., plaintiff Russell Cole contacted his mother, a resident of Los Gatos, concerning a disagreement. [*Dec. of Stearns, Ex. M*]. Following this exchange, Russell Cole then contacted Sunnyvale Department of Public Safety (hereinafter referred to as "SDPS") to report that his mother needed help. [*Dec. of Stearns, Ex. M*]. Cole's mother, Nancy Cole, was then confirmed to be safe pursuant to a welfare check by the Santa Cruz County Sheriffs Department. At some point after receiving the call, and prior to the Sheriff's welfare check, Nancy Cole contacted the Sunnyvale Department of Public Safety and spoke with Dispatch Officer Andrea Atkinson. [*Dec. of Stearns, Ex. F, AA 43:13-25*]. In the conversation, Nancy Cole described that her son was

---

[1] For purposes of the factual summary, SO – refers to the deposition of Stephanie Oberg which is attached to the Declaration of Andrew V. Stearns as Exhibit A; RC – Russell Cole attached as Exhibit B; SR –Steven Rocheville attached as Exhibit C; TH – Tracy Hern attached as Exhibit D; SC – Scott Cortese attached as Exhibit E; AA – Andrea Atkinson attached as Exhibit F; and Kelly Fitzgerald attached as Exhibit G.

1 | "unstable" and "threatening" and claimed to be fearful that her son would be traveling to her

2 | home on that evening. [*Dec. of Stearns, Ex. K*].

3 |      Nancy Cole also identified that Mr. Cole was not a threat to himself or his girlfriend or

4 | her children. In fact, Mrs. Cole was specific that the harm was only in relation to her. SDPS

5 | confirmed prior to arrival at plaintiffs' residence that Nancy Cole was safe. [*Dec. of Stearns, Ex.*

6 | *C, SR p. 87:5-25*]. At this point in time, defendants had no information to suggest that a welfare

7 | check on plaintiffs or the children was necessary at plaintiffs' residence. [*Dec. of Stearns, Ex. C,*

8 | *SR p. 88:14-89:7, 94:10-95:11; Ex. E, SC 51:10-15, 52:2-17; Ex. D, TH 84:4-85:4*]. However,

9 | defendants approached the Cole/Oberg residence to allegedly perform a welfare check.

10 |      **b.   *ARRIVAL AT PLAINTIFFS' RESIDENCE AND SURVEILLANCE.***

11 |      Officer Steven Rocheville (hereinafter "Rocheville") arrived on scene at 849 Corvallis

12 | Avenue in Sunnyvale, California prior to arrival of Officer Scott Cortese (hereinafter "Cortese")

13 | in full uniform. [*Dec. of Stearns, Ex. C, SR p. 70:19-71:6, 78:10-79:4, 96:3, 100:21-101:10, 128:10-*

14 | *16; Ex. F, AA p. 54:6-13; Ex. E, SC p. 28:16-30:1*]. Upon arrival, Rocheville determined he would

15 | conduct surveillance of the home. [*Dec. of Stearns, Ex. C, SR p. 97:20-25, 98:23-99:22*]. While

16 | standing in the driveway, Rocheville stated he heard a person state that "after tomorrow, this

17 | will all be over." [*Dec. of Stearns, Ex. C, SR p. 87:5-25; 114:16-21; Ex. E, SC p. 34:11-35:23; Ex.B,*

18 | *RC 57:1-4*]. This specific phrase was also forwarded to officers on their in-unit computer by

19 | SDPS. Officer Cortese also arrived on the scene within several minutes of Rocheville. [*Dec. of*

20 | *Stearns, Ex. E, SC p. 28:16-30:1*].

21 |      When approaching the home, neither Rocheville nor Cortese had any reason to believe

22 | that anyone inside was hurt; in need of medical assistance; about to hurt themselves; or about

23 | to hurt anyone else. [*Dec. of Stearns, Ex. C, SR p. 108:18-109:7; 51:10-52:23*]. Undeterred,

24 | Rocheville and Cortese, then proceeding to contact plaintiff Russell Cole through his front

25 | kitchen window and asked to speak with him under the auspices of a welfare check on Cole

26 | only. [*Dec. of Stearns, Ex. C, SR 110:5-111:17; Ex. E, SC 47:4-47:24; Ex. B, RC 61:25-63:25*].

27 |      **c.   *DETENTION  IN GARAGE OF PLAINTIFFS' RESIDENCE.***

28 |      In an effort to demonstrate lack of consent, plaintiff Cole instructed Rocheville and

1  Cortese to go to the front garage door.  [*Dec. of Stearns, Ex. C, SR 117:8-121:18*].  Once there,

2  plaintiff Cole only opened the garage door approximately two to three feet.  Without being

3  asked to enter defendants Rocheville and Cortese exerted their authority and entered

4  plaintiffs' garage without consent.  Defendants then engaged in questioning of plaintiff and

5  when Cole stopped responding to questions by defendants, Rocheville and Cortese

6  determined to detain Cole. [*Dec. of Stearns, Ex. C, SR 117:8-121:18; 124:9-24; Ex. E, SC 78:11-16,*

7  *80:1-6; Ex. B, RC 74:14-80:7*].  At some point thereafter Lt. Hern arrived on scene to offer

8  assistance.  [*Dec. of Stearns, Ex. C, SR 131:22-132:5*].  Based on Rocheville's observations, a

9  statement Cole made to an unidentified caller and the dispatch information, Rocheville

10  arrested Cole under California Health and Welfare Code § 5150. [*Dec. of Stearns, Ex. B, RC*

11  *74:17-18*].  Upon learning of other occupants of the home, the defendants without regard to

12  the prior information they had received collectively determined to conduct a welfare check of

13  the home.  [*Dec. of Stearns, Ex. C, SR 149:6-151:23; Ex. E, SC 48:3-49:19*]

14        **d.** *SEARCH OF PLAINTIFFS' RESIDENCE FOR PERSONS.*

15        Rocheville, and Cortese, after conferring with Hern, entered the home to do a welfare

16  check absent either a warrant or articulable facts justifying a warrant exception. [*Dec. of*

17  *Stearns, Ex. C, SR 153:12-155:18; Ex. E, SC 55:2-56:11; Ex. D, TH 86:4-87:12*].  Despite

18  defendants' failure to obtain consent, or even acquire any articulable facts, defendants

19  decided to enter the home anyways and made no attempt to contact persons in the home

20  prior to entry.  [*Dec. of Stearns, Ex. E, SC 57:2-22, Ex. E, TH 120:25-122:16; Ex. B, RC 82:10-16,*

21  *72:25-74:3*].  Rocheville and Cortese then went about searching the home from room to room

22  and located two children and Ms. Oberg.  [*Dec. of Stearns, Ex. E,  SC 62:22-65:1*].  Defendants

23  ordered plaintiff Oberg out of bed; spoke to her in the hallway and then instructed plaintiff

24  Oberg to go to the garage so they could discuss Mr. Cole. [*Dec. of Stearns, Ex. C, SR 156:14-*

25  *161:5; Ex. E, SC 71:15-74:21; Ex. A, SO 79:13-22, 83:3-20, 85:21-86:14*].  After awaking Ms.

26  Oberg, defendants confirmed she was safe.   [*Dec. of Stearns, Ex. E, SC 75:2-5, 76:15-17*].  While

27  in the hallway of plaintiffs' home, defendants had already arrested and determined to take Mr.

28  Cole to Valley Medical Center for observation.  [*Dec. of Stearns, Ex. A, SO 94:9-12, 164:10-16*].

1      **e.** *SEARCH OF PLAINTIFFS' RESIDENCE FOR WEAPONS.*

2        Defendants then searched the home for a second time for weapons ostensibly pursuant

3 to Welfare and Institutions Code § 8102. [*Dec. of Stearns, Ex. E, SC 91:18-97:19; Ex. B, RC 85:3-*

4 *86:3*]. However, before searching the home, Cortese requested permission from Ms. Oberg,

5 who after consultation with Mr. Cole, denied consent. [*Dec. of Stearns, Ex. E, SC 99:13-100:20;*

6 *Ex. A, SO 169:13-170:15*]. Nevertheless, Cortese, under the auspices of § 8102 and knowing no

7 consent had been obtained, entered the home and performed a full search of the house for a

8 weapon that was registered to Mr. Cole, but registered to a different address at least 100 miles

9 away. [*Dec. of Stearns, Ex. E, SC 99:13-100:20*]. Cortese did not find any weapons, despite a

10 thorough search of the entire Cole/Oberg home. Mr. Cole was admitted to Valley Medical

11 Center and was determined not to be § 5150 within a short period of time. He was

12 subsequently released and returned to his home.

13        It must be recognized that the facts provided hereinabove are undisputed as they are

14 admitted to by defendants through deposition testimony. Regardless of the facts of this

15 situation, which may have justified certain decisions made by defendants, other actions

16 cannot be justified for any reason and thus are unconstitutional.

17 **III. PROCEDURAL ISSUES.**

18        By way of plaintiffs' Third Amended Complaint, plaintiff brought the following causes of

19 action[2]:

| Number | Causes of Action | Defendants | Subject of Motion |
|--------|------------------|------------|-------------------|
| 1 | § 1983 Monell – Official Policy, Practice or Custom | City of Sunnyvale | No, Bifurcated by ECF Order No. 97 |
| 2 | § 1983 Monell – Final Policy Maker | City of Sunnyvale | No, Bifurcated by ECF Order No. 97 |
| 3 | § 1983 Monell – Ratification of Police Misconduct | City of Sunnyvale | No, Bifurcated by ECF Order No. 97 |
| 4 | § 1983 Monell – Policy of Failure to Train | City of Sunnyvale | No, Bifurcated by ECF Order No. 97 |
| 5 | § 1983 Monell – Supervisory | Lt. Hern | No |

26

27 [2] Plaintiffs bring summary judgment as to specific claims , described more fully above in this chart. Plaintiff does not waive any causes of action under any claim brought in the Third Amended

28 Complaint, including all statutory violation that may be redressable under § 52.1, § 1983 and the Fourth Amendment.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT. [*FEDERAL RULE OF CIVIL PROCEDURE § 56*].

| Number | Causes of Action | Defendants | Subject of Motion |
|--------|------------------|------------|-------------------|
|        | Liability |  |  |
| 6 | § 1983 – First Amendment, Fourth Amendment, Excess Force | Chief Johnson, Cpt. Fitzgerald, Lt. Hern, Ofc. Rocheville, Ofc. Cortese | Yes, as to plaintiff Oberg's Fourth Amendment Claim |
| 7 | False Imprisonment | Lt. Hern, Ofc. Rocheville, Ofc. Cortese | Yes, as to plaintiff Oberg |
| 8 | Intentional Infliction of Emotional Distress | Lt. Hern, Ofc. Rocheville, Ofc. Cortese | No |
| 9 | Trespass | Lt. Hern, Ofc. Rocheville, Ofc. Cortese | Yes, as to both plaintiff Cole and Oberg |
| 10 | Violation of Bane Act – Cal. Civ. Code § 52.1(b) | Lt. Hern, Officer Rocheville, Officer Cortese | Yes, as to both plaintiff Cole and Oberg |
| 11 | Civil Conspiracy to Violation Civil Rights and Commit Torts | Chief Johnson, Cpt. Fitzgerald, Lt. Hern, Ofc. Rocheville, Ofc. Cortese | No |
| 12 | Aiding and Abetting Violations of Civil Rights and Commissions of Torts | Chief Johnson, Cpt. Fitzgerald, Lt. Hern, Ofc. Rocheville, Ofc. Cortese | No |
| 13 | Negligence | Chief Johnson, Cpt. Fitzgerald, Lt. Hern, Ofc. Rocheville, Ofc. Cortese | No |

## IV.   STANDARD OF MOTIONS FOR SUMMARY JUDGMENT – RULE 56.

For a plaintiff to prevail on Summary Judgment, he or she must demonstrate that no genuine disputes of material fact exist and based on applicable legal principals, he or she is entitled to Judgment as a Matter of Law. *Huppert v. City of Pittsburg,* 574 F.3d 696, 701 (9th Cir. 2009).

Summary judgment is appropriate only where the record, read in the light most favorable to the nonmoving party, indicates that "there is no genuine issue as to any material fact and...the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)[3]; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323-324 (1986). Once the movant has made this showing, the burden shifts to the party opposing summary judgment to "designate specific facts showing there is a genuine issue for trial." *Celotex, supra* at 323

---

[3] Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

1    Material facts are those necessary to the proof or defense of a claim, as determined by

2   reference to substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A

3   "genuine" issue of material fact exists if there is sufficient evidence for a reasonable jury to

4   return a verdict for the non-moving party. *Anderson, supra at* 248. The Ninth Circuit has also

5   identified what constitutes a material fact as a fact that might affect the ultimate outcome of

6   the suit. *United States of America v. Kapp,* 564 F.3d 1103, 1114. (9th Cir. 2008). In other

7   words, a material fact is one that involves an element of a claim brought by plaintiff or a

8   defense. On the other hand, an immaterial fact can be described as ancillary and secondary to

9   the genuine issues which ultimately establish or defeat a party's claims.

10         *a.   EVIDENTIARY STANDARD AT SUMMARY JUDGMENT STAGE.*

11    In reviewing a Motion for Summary Judgment, "the non-moving party...gets the benefit

12   of reasonable inferences." *Zobmondo Entm't, LLC v. Falls Media, LLC,* 602 F.3d 1108, 1115 (9th

13   Cir. 2010). As to evidentiary matters, the Court must view the evidence "through the prism of

14   the substantive evidentiary burden." *Van Asdale v. Int'l Game Tech.,* 577 F.3d 989, 996 (9th Cir.

15   2009). For example, the clear and convincing standard must be met as to all evidence issues

16   resolved in this case. Circumstantial and other forms of evidence may also be used to support

17   or defeat a Motion for Summary Judgment. *Clouthier v. County of Contra Costa,* 591 F.3d 1232,

18   1237 (9th Cir. 2010) (summary judgment overturned when circumstantial evidence existed

19   which could reasonably be used by a jury to decide claims). However, a Court is not obligated

20   to believe evidence that cannot be supported by fact. Evidence that is impossible or

21   unbelievable by reasonable interpretation and common sense, does not create a genuine

22   factual dispute and may be used to defeat a defense or claim of either party. *Gregory v. County*

23   *of Hawaii,* 523 F.3d 1103, 1108 (9th Cir. 2008). Thus, the court must only give credence to

24   those matters that are undisputed and certain.

25         *b.   PURPOSE OF RULE 56 SUMMARY JUDGMENT MOTION.*

26    The purpose of a Motion for Summary Judgment is well-established – "whether the

27   evidence presents a sufficient disagreement to require submission to a jury or whether it is so

28   one-sided that one party must prevail as a matter of law." *Anderson, supra at* 252; see also

*McSherry v. City of Long Beach,* 584 F.3d 1129, 1135 (9th Cir. 2010). In this context, the District Court's role is limited to looking solely at the undisputed evidence and its application to the law. *Dominguez-Curry v. Nevada Transp. Dept.,* 424 F.3d 1027 (9th Cir. 2005) ("the judge does not weigh disputed evidence with respect to a disputed material fact. Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions. These determinations are within the province of the factfinder at trial"). In this case, as shown below, based on the evidence and the claim that this incident involves a mistake of law, plaintiffs are entitled to judgment.

## V.     APPLICABLE STATUTES AND CASES.

Unlike most civil rights cases, this case boils down to the simple misapplication of California law which in turn resulted in a constitutional violation against both plaintiffs. Specifically, there are two (2) statutes which, when viewed collectively, demonstrate defendants' violation of and misunderstanding of the parameters of the Fourth Amendment to the United States Constitution, California Civil Code §52.1 and common law torts for false arrest. Those two (2) statutes are California Welfare and Institutions Code §§ 5150 and 8102.

### *a.   CALIFORNIA WELFARE AND INSTITUTIONS CODE § 5150.*

California Welfare and Institutions Code § 5150 provides:

> When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, member of the attending staff, as defined by regulation, of an evaluation facility designated by the county, designated members of mobile crisis team provided by Section 5651.7, or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Mental Health as a facility for **72-hour treatment and evaluation.**
> Such facility shall require an application in writing stating the circumstances under which the person's condition was called to the attention of the officer, member of the attending staff, or professional person, and stating that the officer, member of the attending staff, or professional person has probable cause to believe that the person is, as a result of mental disorder, a danger to other, or to himself or herself, or gravely disabled. If the probable cause is based on the statement of a person other than the officer, member of the attending staff, or professional person, such person shall be liable in a civil action for intentionally giving a statement which he or she knows to be false. (Emphasis added).

Of great importance to this case is the statute's premise that a person is placed on a 72 hour hold for the purpose of removing the person from harm to themselves and others. This 72 hour hold is significant in that the three day period allows for police to employ methods of obtaining a search warrant prior to entering a home or to effectuate any other necessary actions to ensure the safety of the relevant community.

### b. *CALIFORNIA WELFARE AND INSTITUTIONS CODE § 8102.*

California Welfare and Institutions Code § 8102(a) provides:

> Whenever a person, who has been detained or apprehended for examination of his or her mental condition or who is a person described in Section 8100 or 8103, is found to own, have in his or her possession or under his or her control, any firearm whatsoever, or any other deadly weapon, the firearm or other deadly weapon *shall be* confiscated by any law enforcement agency or peace officer, who shall retain custody of the firearm or other deadly weapon. (emphasis added).

As shown through the highlighted portion above, § 8102 mandates that a person who has been placed on a hold pursuant to a mental condition is required to surrender or have removed from their possession all firearms. The purpose for this instruction is understandable, to prevent a person who owns a weapon from potentially using it to harm themselves or others, until such time as their mental condition has been certified as stable.

However, the statute that provides the mechanism for obtaining search warrants in California, California Penal Code § 1524, did not provide a statutory reference to §§ 5150 or 8102 as of the date of the incident which is the subject of plaintiffs' claim. It is for this reason that a search in response to § 8102 could not be performed following the arrest of a person in response to § 5150 unless a warrant is obtained. In most circumstances, this problem would not rise to the level of constitutional violations because if a person was detained and arrested within the home, a reasonable search inside the home for weapons may have justified a warrant exception. However, the situation which arose in plaintiffs' case, and others, is: whether an officer may conduct a search under § 8102 without a warrant or exception if a party

1   is arrested outside the residence or is a in a closed off area of the premises, such as, a

2   garage.  The Third District Court of Appeals answered this question with a resounding,

3   no.

### c.   PEOPLE V. SWEIG (TRAVIS).

5        On October 27, 2008, prior to plaintiffs filing their Complaint, the 3rd District Court of

6   Appeals of California issued its ruling in the case of *People v. Sweig (Travis).*[4]  In that case, the

7   Court of Appeals determined that although a statutory flaw existed in the §§ 5150, 8102,[5]

8   officers were nevertheless in violation of the Fourth Amendment for searching absent a

9   warrant or warrant exception.  Most importantly, the 3rd District determined that no

10  reasonable officer would ever find it permissible to search a home, the zenith of constitutional

11  protection, based on a state statute.  In other words, a state statute could never, justify or be

12  inferred to justify, the unconstitutional – a violation of the United States Constitution warrant

13  requirement.

### d.   CALIFORNIA LEGISLATURE AMENDMENT OF WARRANT ALLOWANCES.

15       The California Supreme Court granted certiori in *Sweig* on February 11, 2009.  Almost

16  immediately, the California Legislature amended California Penal Code § 1524 to allow for

17  officers to obtain a warrant in circumstances involving Welfare and Institutions Code §§ 5150

18  and 8102.

19       In debating the specific provisions of this amendment, the California Assembly

20  Committee on Public Safety (Assembly Bill 532) and the California Senate Committee on

21  Public Safety each provided legislative analysis on this particular statute.  [*Request for Judicial*

22  *Notice, Ex. D and E*].  Additionally, although not a part of the final bill, the statutory analysis

23  and original bill draft included a specific reference to *Sweig:*

24

25  ────────────────────
    [4] Although this case has been depublished in California, due to the California Supreme Court's review.
    The review was rendered moot and the case never overturned or remanded for other considerations.

26  Plaintiffs provide it for background purposes in order to understand what prompted the amendment
    of California law relating to §§ 5150 and 8102.

27  [5] The flaw was the lack of a constitutionally permissible way to effectuate a search and seizure

28  pursuant to § 8102 when a suspect was already detained and thus unable to pose any gun related
    harm to himself/herself/others.

It is the intent of the Legislature in enacting this act to address the holding People v. Sweig (2008) 167 Cal.App.4th 1145 and the court's suggestion that the Legislature "address the statutory flaw" highlighted in that case.  It is not the intent of the Legislature to authorize the seizure of any firmarms owned by, or in the possession of, or under the custody and control of, any person not subject to the provisions of Section 12028.5 of the Penal Code or Section 8102 of the Welfare and Institutions Code.  *See Request for Judicial Notice Ex. A through G.*

Thereafter, in direct relation to the amendment of the statute, the California Supreme Court dismissed its review in *Sweig* by stating "[i]n light of Assembly Bill No. 532 (2009-2010 Reg. Sess.), signed by the Governor and chaptered by the Secretary of State on October 11, 2009 (see Stats. 2009, ch. 450, review in this matter is dismissed)."  In making this statement the California Supreme Court did not overturn the lower Court decision and thus kept the ruling effectively in place.  In sum, the Supreme Court acquiesced to the amendment of the statute and to the finding of constitutional violations.  No other inferences can be drawn from the Court's action, as anything further would be conjecture and speculation.

## VI.   VIOLATION OF FOURTH AMENDMENT BY SEIZURE OF PLAINTIFF STEPHANIE OBERG (FIRST SEARCH).

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, "'by means of physical force or show of authority,'" terminates or restrains his or her freedom of movement. *Brendlin v. California*, 551 U.S. 249 (2007).   The Fourth Amendment establishes that all citizens enjoy the right to "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, support by oath or affirmation and particuly describing the place to be searched and the persons or things to be seized.

The fundamental premise of the Fourth Amendment is to "safeguard the privacy and security of individuals against arbitrary invasions of governmental officials." *Camara v. Municipal Court of the City and County of San Francisco,* 387 U.S. 523 (1967).  A detention and seizure occurs when a person is not free to leave and when their movement is significantly

1   cutailed by way of an officer's show of authority. "An investigatory detention must be

2   temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida*

3   *v. Royer,* 460 U.S. 491 (1983). "The critical inquiry is whether officers diligently pursued

4   means of investigation that was likely to confirm or dispel their suspicions quickly." *United*

5   *States v. Torres-Sanchez,* 83 F.3d 1123, 1129 (9th Cir. 1996). It is mandated that the least

6   intrusive means be used in detaining someone or performing investigatory actions. *Liberal v.*

7   *Estrada,* 632 F.3d 1064, 1080 (9th Cir. 2011).

8         Here, officers Rocheville and Cortese, by order of and in acquiescence with Lt. Hern,

9   seized plaintiff Oberg without any reasonable suspicion (or reasonable inference) that a

10  person in the home was injured or needed assistance[6]. Defendants had the opportunity to

11  contact Oberg, in the least intrusive means, by calling her cell phone and requesting her to

12  come to her garage to confirm her well-being. Instead, defendants chose to enforce the most

13  intrusive means, by walking into a darkened home in the middle of the night with their

14  flashlights on, and choosing to enter the home for purpose of forcing plaintiff Oberg to the

15  garage. During this time, defendants were acting ostensibly under the community caretaker

16  or welfare exception to the Fourth Amendment. However, shown hereinbelow, and admitted

17  by defendants, no articulable facts were present which would justify a welfare check.

18        Although defendants may have gone through the home with the purpose of identifying

19  persons in danger, no articulable fact provided defendants with the need to enter the home.

20  There were no objective indications that anyone needed assistance. At this point in time,

21  defendants were allegedly operating under the welfare exception to the warrant requirement.

22  However, in order to invoke this exception, defendants must possess some objective

23  reasonable basis or suspicion for their actions. "In order to form reasonable suspicion, an

24  officer must have specific articulable facts which, together with objective reasonable

25  inferences, form the basis for suspecting that the particular person detained is engaged in

26  criminal activity." *Liberal, supra* at 1077. In this circumstance, Ms. Oberg posed no threat nor

27  were defendants obligated to enter her home to protect anyone's safety. It is noteworthy that

28

---

[6] Or committed or was about to commit any crime or criminal act.

1   defendants went to the home in response to the call from Nancy Cole and believed her

2   statements that Cole was unstable.  In contrast, defendants did not believe Nancy Cole when

3   she specifically identified that Russell Cole was only a threat to her and that "they're a very

4   stable family" and that "he has no violent history."  Based on this information, and based on

5   the offer of Mr. Cole to contact Ms. Oberg by telephone, the decision to enter the home to seize

6   Ms. Oberg was unreasonable.  Defendants could have also gone to the front door of the home

7   where they originally began the incident and rung the doorbell.  Any number of things could

8   have gone wrong in this unjustified search, such as a child awaking to an unknown stranger

9   with a flashlight walking around their home.

10          As is customary, defendants will inevitably argue that Ms. Oberg was not necessarily

11   seized.  However, as provided above, impossible and improbable evidence cannot be used at

12   summary judgment.  When an officer enters a home and demands a person get out of their

13   bed, nothing less than a seizure under the Fourth Amendment has occurred.  The question

14   must be asked: If you were woken in the middle of the night by a fully armed police officer

15   shining a flashlight in your darkened hallway, would you ignore it?  Most reasonable persons

16   would answer no and likewise would consider the police, now in your home, to be restricting

17   and directing your movements.

18          **a.  WELFARE/COMMUNITY CARETAKER EXCEPTION TO THE WARRANT REQUIREMENT.**

19          The community caretaking exception allows officers to conduct certain activities that

20   are distinct from investigating crime.  In these circumstances, officers are entitled to take a

21   number of actions which would promote public safety.  *U.S. v. Rodriguez-Morales* 929 F.2d

22   780, 784-785 (1st Cir. 1991).  It is equally true that no exigency arose in the home which

23   would justify defendants required entry into the home.

24          **b.  EMERGENCY AID EXCEPTION TO THE WARRANT REQUIREMENT.**

25          An exception to the search warrant requirement arises in the case of exigent or

26   emergency circumstances in which police officers reasonably believe "that a person within is

27   in need of immediate aid." *Mincey v. Arizona,* 437 U.S. 385, 392 (1978).  The Ninth Circuit has

28   adopted a two-part test for determining whether the emergency aid exception applies, which

1    asks "whether: (1) considering the totality of the circumstances, law enforcement had an

2    objectively reasonable basis for concluding that there was an immediate need to protect

3    others or themselves from serious harm; and (2) the search's scope and manner were

4    reasonable to meet the need." *U.S v. Snipe,* 515 F.3d 947, 951 (9th Cir. 2008). "When a

5    government agent enters a home without a warrant, 'the burden is on the government to

6    demonstrate exigent circumstances that overcome the presumption of unreasonableness that

7    attaches to all warrantless home entries.'" *U.S v. Davis,* 290 F.3d 1239, 1242 (10th Cir. 2002);

8    see also *Welsch v. Wisconsin,* 466 U.S. 740, 749 (1984).

9          As has been admitted by defendants in the testimony provided hereinabove, no

10   articulable facts were present before the officers that there was an immediate need to protect

11   anyone from harm.  More importantly, by the time officers entered the home Mr. Cole had

12   already been handcuffed to a chair in the garage and was not free to move or harm anyone.

13   [*Dec. of Stearns, Ex. E, SC p. 83:13-84:2*].  Most importantly, all of the information obtained by

14   officers, from Nancy Cole, from Russell Cole (his silence) and from their own records

15   demonstrated that Mr. Cole was not violent and was not a threat to anyone.  As to the second

16   prong, defendant's search was not limited in scope and proceeded through the entire home.

17   Also, defendants could have rung the doorbell, knocked on the front doors or windows,

18   shouted for anyone in the home, or done any number of other actions to identify if anyone was

19   in fact in the home or injured.  Instead, defendants entered the home solely to confirm what at

20   that point was unknown, whether anyone was even in the house.  It is a violation of plaintiff's

21   rights to enter the home to corroborate a hunch, absent any other articulable facts which

22   confirm the hunch.

23   **VII.    VIOLATION OF FOURTH AMENDMENT BY SEARCH PLAINTIFFS RESIDENCE (SECOND**

24         **SEARCH).**

25         Defendant similarly violated plaintiffs' Fourth Amendment right by searching the

26   residence the second time. "[E]xcept in certain carefully defined classes of cases, a search of

27   private property without proper consent is 'unreasonable' unless it has been authorized by a

28   valid search warrant" *Michigan v. Tyler,* 436 U.S. 499, 506 (1978); *Camara v. City and County*

1  *of San Francisco,* 387 U.S. 523, 528 (1967). As was evident through the officers' testimony,

2  defendants searched the plaintiffs' home for one (1) reason only – Welfare and Institutions

3  Code§ 8102. However, Cortese and Hern, could not reasonably agree that a statute would

4  justify, what for all intents and purposes was the unjustifiable, warrantless search of a

5  citizen's home. This statement is not made in a vacuum, as defendants have admitted that no

6  warrant exception was present which would justify defendants' search of the residence.

7        **a.** ***EXCEPTIONS TO THE WARRANT REQUIREMENT***

8       "There is no bright-line rule as to whether a 911 call reporting that an occupant of a

9  residence is in danger is sufficient to give rise to exigent circumstances." *Silva v. City of San*

10  *Leandro,* 744 F. Supp. 2d 1036, 1051 (N.D. Cal. 2010).

11       "Searches and seizures inside a home without a warrant are presumptively

12  unreasonable." *Payton v. New York,* 445 U.S. 573,586 (1980). "[T]here are two general

13  exceptions to the warrant requirement for home searches: exigency and emergency." To

14  succeed in invoking these exceptions, "the government must...show that a warrant could not

15  have been obtained in time." *United States v. Good,* 780 F.2d 773, 775 (9th Cir. 1986). "These

16  exceptions are 'narrow' and their boundaries are 'rigorously guarded' to prevent expansion

17  that would unduly interfere with the sanctity of the home." *Hopkins v. Bonvicino,* 573 F.3d 752,

18  763 (9th Cir. 2009) (citing *United States v. Stafford,* 416 F.3d 1068, 1073 (9th Cir. 2005).

19       In this case, defendants must prove that a warrant exception either exists or that §

20  8102 excuses them from this requirement. Here, no warrant exception is present since

21  defendants cannot provide any justifiable basis for entering the Cole/Oberg residence. Of

22  most importance is the fact that defendants had already entered the home and were aware

23  that no person within the home was in danger. Given that Mr. Cole was the only potential

24  suspect in the home and he was fully contained in handcuffs in the garage; and given the no

25  other articulable fact was present which could demonstrate that a gun in the home of a stable

26  woman was a threat to anyone, a warrant would be mandatory.

27       Therefore, defendants were required to obtain a warrant when they established no one

28  capable of using a gun was still in the house. *Millender v. County of Los Angeles,* 2010 U.S. App.

1  LEXIS 17673 (2010).  This failure to obtain a warrant is a constitutional violation as a matter

2  of law.

3         **b.**  ***ENTRY INTO THE HOME FOR THE PURPOSES OF § 8102.***

4         "The Fourth Amendment does not authorize the issuance of warrants to conduct

5  fishing expeditions to find evidence that could assist officers in prosecuting suspects."

6  *Maryland v. Garrison,* 480 U.S. 79, 87 (1987).  In this case, the totality of the facts available to

7  the officers do not "justify abandoning the Fourth Amendment's traditional hostility to police

8  entry into a home without a warrant." *Georgia v. Randolph,* 547 U.S. 103, 126 (2006).

9  To determine whether a search is reasonable under the Fourth Amendment, Courts compare

10  "the need for the particular search against the invasion of personal rights that the search

11  entails." *Way v. County of Ventura,* 445 F.3d 1157, 1160 (9th Cir. 2006).  State law is also

12  relevant in analyzing the reasonableness of a search under the Fourth Amendment. *Reed v.*

13  *Hoy,* 909 F.2d 324, 330 fn. 5 (9th Cir. 1989).

14         **c.**  ***MISTAKE OF LAW AS TO CALIFORNIA WELFARE AND INSTITUTIONS CODE § 8102.***

15         When an officer fails to understand the law and conducts a stop based on his

16  mistake of law, such a stop is not objectively reasonable and violates the Fourth Amendment.

17  A traffic stop is a "seizure" within the meaning of the Fourth Amendment, and the

18  Amendment's protections apply to investigatory stops of persons or vehicles that are

19  suspected of violating the law. *United States v. Arvizu,* 538, U.S 266, 273 (2002). An officer

20  may stop and detain a motorist on reasonable suspicion that the driver has violated the law.

21  *People v. Wells,* 38, Cal.4th 1078, 1082-1083 (2006).  The same legal standard applies to the

22  stopping of bicyclists.

23         The present case is analogous to the facts forming the basis for the vehicle stop in

24  *United States v. Lopez-Soto,* 205 F.3d 1101 (9th Cir. 2000).  In *Lopez-Soto,* an officer stopped

25  the defendant's Baja California-plated vehicle on the mistaken belief that Baja California

26  required motorists to affix registration stickers in such a manner than they are visible from

27  the rear of the vehicle, which is not actually the law. The Court held that the officer violated

28

1  the Fourth Amendment, despite its belief that the officer acted in good faith.[7] To rule

2  otherwise "would remove the incentive for police to make certain that they properly

3  understand the law that they are entrusted to enforce and obey." *Id.* at 1106.

4       Another similar case is *United States v. Chanthasouxat, 342 F.3d 1271* (11th Cir.

5  2003), wherein the court held that conduct premised totally on a mistake of law cannot

6  create the reasonable suspicion needed to justify a traffic stop and recognized

7  "fundamental unfairness of holding citizens to the traditional rule that ignorance of the law

8  is no excuse, while allowing those entrusted to enforce the law to be ignorant of it." *Id.* at

9  1280 (internal quotation marks omitted). See *United States v. Coplin*, 463 F.3d 96, 101 (1st

10  Cir. 2006) ("Stops premised on a mistake of law, even a reasonable, good-faith mistake, are

11  generally held to be unconstitutional."); *United States v. McDonald*, 453 F.3d 958, 962 (7th

12  Cir. 2006) ("A stop based on a subjective belief that a law has been broken, when no

13  violation actually occurred, is not objectively reasonable.").  Because officers were

14  mistaken in their application of the law, they are in violation of the Fourth Amendment, §

15  52.1 and common law torts.

16       Defendants may assert that this particular statute is vague and thus defendant

17  officers cannot be held to comprehend the specific flaw identified by the appellate court.

18  However, this argument is incorrect since § 8102 has already been determined to be

19  unambiguous.  "In any event, the question is not whether the scheme set forth in some

20  other statute might be more precise, but whether that set forth in section 8102 is

21  unconstitutionally vague. We conclude it is not." *Rupf v. Yan*, 85 Cal. App. 4th 411 (Cal. App.

22  1st Dist. 2000).  In sum, it is unreasonable to believe that a police officer must guess as to its

23  meaning.

24       Notwithstanding the unreasonableness of the argument taken by defendants,

25  defendants assert they were unaware that a warrant was required in response to a § 5150.

26  Lt. Hern, the highest ranking official on scene, admitted that:

27               124
     6  A. Prior to the search for the weapons was

28

---

[7] In the present case, the Plaintiff does <u>not</u> concede that the Defendants acted in good faith.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT. [*FEDERAL RULE OF CIVIL PROCEDURE § 56*].

7 conducted, I clarified with Officer Rocheville if
8 Mr. Cole was, in fact, detained for a 5150, which he did
9 say yes, he was.  Maybe not in as many words, but he
10 said yes, he's detained for 5150 and would be going to
11 Valley Medical Center.
12        With 5150 comes into play our policy in the
13 section of 8102 of the Welfare Intuitions Code where our
14 policy says any person who is detained under 5150 to be
15 seen or brought to medical attention that the officer
16 shall make every effort to locate weapons and confiscate
17 those weapons per 8102.

Such a lackadaisical policy which disregards the warrant requirement is unconstitutional.

*[Dec of Stearns, Ex. D, TH p. 124:6-129:24]*.  Captain Kelly Fitzgerald, who reviewed this

particular case for his department, also admitted that nothing in § 8102 would justify a

warrantless entry into the home. *[Dec of Stearns, Ex. G, KF p. 30:21-32:10; 44:7-47:16]*.  By

admitting a policy to search the home under § 8102, defendants are acknowledging they

violated plaintiff's constitutional rights since their behavior is per se unreasonable.  Also of

note is the fact that defendant did not even think to develop or analyze whether an exception

to the warrant requirement since as they understood it, no warrant was necessary.

## VIII.  VIOLATION OF THE CALIFORNIA BANE ACT.

California Civil Code § 52.1.

(a) If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. An action brought by the Attorney General, any district attorney, or any city attorney may also seek a civil penalty of twenty-five thousand dollars ($25,000). If this civil penalty is requested, it shall be assessed individually against each person who is determined to have violated this section and the penalty shall be awarded to each individual whose rights under this section are determined to have been violated.
(b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under

1  Section 52, injunctive relief, and other appropriate equitable relief to protect the
peaceable exercise or enjoyment of the right or rights secured.

2     A violation of Civil Code §52.1 does not require intent or the existence of a protected

3  class. *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820- 841-843. The only requirement

4  is the interference by "threat, intimidation or coercion." *See, Cole v. Doe* (N.D.Cal. 2005) 387

5  F.Supp.2d 1084, 1103 ("Use of law enforcement authority to effectuate a stop, detention

6  (including the use of handcuffs), and search can constitute interference by 'threat [],

7  intimidation, or coercion' if the officer lacks probable cause to initiate the stop, maintain the

8  detention, and continue a search."). *See also, Rutledge v. County of Sonoma* (2008) 2008

9  U.S.Dist. LEXIS 51313, *10. As indicated herein, there was no good cause for the actions taken

10  by officers. Given the lack of justifiable grounds to detain plaintiffs and for searching the

11  home, and by use of their law enforcement authority, defendants violated the Bane Act by

12  their actions.

13     "The word "interferes" as used in the statute means "violates." *Austin B.* v. Escondido

14  Union School Dist., 149 Cal. App. 4th 860 (Ct. App. 2007). In this case, defendants falsely

15  detained and imprisoned plaintiff Oberg and Cole and searched their home. As a result of

16  these actions, false imprisonment as shown below, trespass and violations of the Fourth

17  Amendment also result in a violation of the Bane Act.

18  **IX.    FALSE IMPRISONMENT AND UNLAWFUL DETENTION (STEPHANIE OBERG).**

19     Under California law, the torts of false arrest and false imprisonment are not separate

20  torts, as false arrest is "but one way of committing a false imprisonment." *Asgari v. City of Los*

21  *Angeles,* 15 Cal. 4th 744 (1997). To be liable false imprisonment, a party would need to

22  demonstrate that they were unlawfully confined and lasted for a period of time. *Eaton v.*

23  *Sutter Coast Hospital,* 80 Cal. App. 4th 485, 496 (2000) (elements of false imprisonment include

24  the non-consensual and unlawful confinement of a person, for an appreciable period of time).

25  The determination of lawfulness hinges on probable cause for the detention or arrest. *People*

26  *v. Craft,* 23 Cal.4th 978, 1037 (2000).

27     Probable cause exists when an officer has reasonable suspicion that an offence has

28  been or is being committed by the person being detained or arrested. *Beck v. Ohio,* 379 U.S.

1   89, 91 (1964).  For information to amount to probable cause, it does not have to be conclusive

2   of guilt, and does not have to exclude the possibility of innocence.  *See also Garcia v. County*

3   *Merced,* 2011 U.S. App. LEXIS 9184 (9th Cir. 2007); see also *United States v. Lopez*, 482 F.3d

4   1067, 1072 (9th Cir. 2007).  In this particular instance, defendants had no reason to believe

5   that Oberg violated any law.  By forcing her out of her bed, let alone her home, defendants

6   Rocheville, Hern and Cortese, falsely imprisoned plaintiff.  Despite being in her own home,

7   plaintiff was removed and was not free to leave and go back to bed.

8   **X.**     **TRESPASS (STEPHANIE OBERG AND RUSSELL COLE).**

9   "Under California law, a plaintiff must prove: (1) the plaintiff's ownership or control of the

10   property, (2) the defendant's intentional, reckless, or negligent entry on the property, (3) lack

11   of permission to enter the property, or acts in excess of the permission, (4) actual harm, and

12   (5) the defendant's conduct was a substantial factor in causing the harm." *Johnson v. County of*

13   *Contra Costa,* 2010 U.S. Dist. LEXIS 92020; *citing  Ralphs Grocery Co. v. United Food and*

14   *Commercial Workers Union Local 8,* 113 Cal.Rptr.3d 88, 93 (2010).

15         In this instance, the elements requiring trespass have been met.  Officers Rocheville

16   and Cortese entered the home where Cole and Oberg reside and did so out of mistake of law.

17   Nevertheless, the facts demonstrate that this entry was unauthorized and caused a

18   constitutional injury to plaintiffs. *Church of Christ in Hollywood v. Superior Court,* 99 Cal. App.

19   4th 1244, 1252 (2002) ("the entry on the property...must be *unauthorized* trespass liability to

20   be found.")  By entering the home, and invading the property a trespass has occurred.  It

21   should also be noted that a trespass occurs almost as a matter of course, when an unlawful

22   search occurs.  For this reason, plaintiffs should be granted partial summary judgment as to

23   their state law claims.

24   **XI.**     **DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.**

25         Under *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court established the

26   standard for determining whether an officer is entitled to qualified immunity.   "[T]he

27   relevant dispositive inquiry in determining whether a right is clearly established is whether it

28   would be clear to a reasonable officer that his conduct was unlawful *in the situation he*

1    confronted." *Saucier v. Katz,* 533 U.S. 194, 202 (2001).  (Emphasis added).

2    Qualified immunity can only be granted when the facts, "[t]aken in the light most

3    favorable to the party asserting the injury, ... the facts alleged [do not] show the officer's

4    conduct violated a constitutional right" or if the right violated was not clearly established at

5    the time of the violation. *Saucier, supra at* 201.

6    Here, defendants are not entitled to qualified immunity based on the objective facts

7    before the officers in question.  As of the date of this incident, the law was clearly established

8    as to the reasonable suspicion and probable cause necessary to seize and search a suspect.

9    Also, as the California Legislature recognized, a police officer could never presume that a state

10   statute would make constitutional, what for all intents and purposes, is unconstitutional – the

11   seizure of a plaintiff without reasonable suspicion that a crime had been committed and the

12   search of a home without a warrant exception or warrant.  Because the defendants' actions

13   cannot be considered reasonable, there is no basis for finding immunity which is based upon

14   the reasonableness of the officer.

15   Plaintiffs also bring claims under California common law.  As to these claims, qualified

16   immunity is unavailable.  Similarly, defendants are not entitled to immunity under California

17   Immunity statutes since "[i]mmunity is reserved for those *basic policy decisions...* committed

18   to coordinate branches of government and as to which judicial interference would thus be

19   unseemly." *Liberal v. Estrada,* 632 F.3d 1064, 1090 (9th Cir. 2011).   *Venegas v. Cnty. of Los*

20   *Angeles,* 153 Cal. App. 4th 1230 (Cal. Ct. App. 2007) provides that qualified immunity is not a

21   bar to § 52.1 claim.  See also *Ogborn v. City of Lancaster,* 101 Cal. App. 4th 448 (Cal. Ct. App.

22   2002) ("The doctrine of qualified governmental immunity is a federal doctrine that does not

23   extend to state tort claims against government employees.").

24   **XII.   CONCLUSION.**

25   Based on the foregoing, the plaintiffs' respectfully request that the Court grant

26   plaintiffs' *Motion*.  Plaintiff requests the Court determine that plaintiffs are entitled to partial

27   summary judgment on certain legal issues provided herein.

28

DATED: May 13, 2011   **THE LAW FIRM OF KALLIS & ASSOCIATES, P.C.**

By:_____ /S/ _____

M. JEFFERY KALLIS

DATED: May 13, 2011   **BUSTAMANTE, O'HARA & GAGLIASSO, PC**

By:_____ /S/ _____

ANDREW V. STEARNS
STEVEN M. BERKI
GAURAV D. SHARMA

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT. [*FEDERAL RULE OF CIVIL PROCEDURE § 56*].