Gregory M. Fox, State Bar No. 070876
Dana L. Soong, State Bar No. 168160
BERTRAND, FOX & ELLIOT
The Waterfront Building
2749 Hyde Street
San Francisco, California 94109
Telephone:    (415) 353-0999
Facsimile:    (415) 353-0990

Attorneys for Defendants CITY OF SUNNYVALE,
CHIEF DON JOHNSON, CAPT.KELLY FITZGERALD.
OFFICER STEVEN ROCHEVILLE, LIEUTENANT TRACY HERN
and OFFICER SCOTT CORTESE

UNITED STATE DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL COLE and STEPHANIE OBERG,<br><br>          Plaintiffs,<br><br>    vs.<br><br>CITY OF SUNNYVALE, CHIEF DON JOHNSON, CAPT. KELLY FITZGERALD, OFFICER STEVEN ROCHEVILLE, LIEUTENANT TRACY HERN and OFFICER SCOTT CORTESE,<br><br>          Defendants. | Case No.:  C08-05017 RMW<br><br>**DEFENDANTS CITY OF SUNNYVALE, CHIEF DON JOHNSON, CAPT. KELLY FITZGERALD, OFFICER STEVEN ROCHEVILLE, LIEUTENANT TRACY HERN AND OFFICER SCOTT CORTESE'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [FRCP RULE 56]**<br><br>Date:   June 17, 2011<br>Time:   9:00 a.m.<br>Courtroom 6, 4th Floor, San Jose<br><br>Honorable Ronald M. Whyte |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS ..................................................................................1

III.    ARGUMENT .......................................................................................................6

        A.      Plaintiffs Fail To Meet Their Burden To Justify Partial Summary
                Judgment In Their Favor........................................................................6

        B.      Plaintiffs' Representation Of The Applicable Statutes And Cases Is
                Incorrect ..................................................................................................7

        C.      Plaintiff Oberg's Fourth Amendment Rights Were Not Violated And Her
                42 U.S.C. § 1983 Claim Is Unsupportable.............................................7

                1.      The First Search Of Plaintiff's Residence By Officers Rocheville
                        And Cortese Was Reasonable And Did Not Violate Oberg's Fourth
                        Amendment Rights ......................................................................8

                2.      Oberg Was Not Detained in Violation Of The Fourth Amendment...............12

                3.      Officer Cortese's Second Search Of The Residence For Weapons
                        Was Lawful Under Welf. & Inst. Code § 8102 ................................15

                4.      Defendants Cannot Be Held Vicariously Liable Under § 1983 And
                        Chief Johnson and Capt. Fitzgerald Are Not Individually Liable ..................20

        D.      The Officers Are Entitled To Qualified Immunity From Plaintiffs Federal
                Claims ....................................................................................................20

        E.      Oberg's State Law False Imprisonment Claim Is Unsupportable ...............................23

        F.      Plaintiffs' Trespass Claim Is Unsupportable .........................................23

        G.      Plaintiff's Claim for Violation of Civil Code § 52.1 Is Unsupported.........................23

        H.      Defendants Are Immune From Liability For Plaintiffs' State Law Torts ...................25

        I.      Objections To Plaintiffs' Evidence........................................................25

IV.     CONCLUSION...................................................................................................25

i

# TABLE OF AUTHORITIES

**Cases**

*Acri v. Varian Assoc.*
   114 F.3d 999 (9ᵗʰ Cir. 1997) ......................................................................21

*Alexander v. County of Los Angeles*
   64 F.3d 1315 (9ᵗʰ Cir. 1995) ......................................................................21

*Anderson v. Creighton*
   483 U.S. 635 (1987) .....................................................................................21

*Ashcroft v. Iqbal*
   129 S.Ct. 1937 (2009) ..................................................................................20

*Ashley v. Sutton*
   492 F.Supp.2d 1230 (Dist. Ore. 2007) ......................................................21

*Baker v. McCollan*
   443 U.S.137 (1979) .........................................................................................8

*Barsamian v. City of Kingsburgh*
   597. F.Supp.2d 1054 (E.D. Cal. 2009) ......................................................24

*Beier v. City of Lewiston*
   354 F.3d 1058 (9ᵗʰ Cir. 2004) ......................................................................8

*Bias v. Moynihan*
   508 F.3d 1212 (9ᵗʰ Cir. 2007) ..................................................................8, 9

*Billington v. Smith*
   292 F.3d 1177 (9ᵗʰ Cir. 2002) ....................................................................11

*Bingham City Utah v. Stuart*
   547 U.S. 398 (2006) .....................................................................................10

*Brinegar v. United States*
   338 U.S. 160 (1949) .......................................................................................8

*Brousseau v. Haugen*
   543 U.S. 194 (2004) .....................................................................................21

*Bryte v. City of La Mesa*
   207 Cal.App.3d 687 (1989) .........................................................................16

*Cady v. Dombrowski*
   413 U.S. 433 (1973) .....................................................................................11

*Caldwell v. Montoya*
   (1995) 20 Cal.4ᵗʰ 972 ..................................................................................25

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986) .......................................................................................6

*Cole v. Doe*
  387 F.Supp.2d 1084 (N.D. Cal. 2005) ............................................................................24

*Dawson v. City of Seattle*
  435 F.3d 1054 (9th Cir. 2006) ..............................................................................14, 15

*Devereaux v. Abbey*
  263 F.3d 1070 (9th Cir. 2001) ...........................................................................................6

*Eisenberg v. Ins. Co. of N. Am.*
  815 F.2d 1285 (9th Cir. 1987) ...........................................................................................6

*Ex Parte Bell*
  19 Cal.2d 488 (1942) .........................................................................................................24

*Florida v. Bostick*
  501 U.S. 429 (1991) ...........................................................................................................13

*Georgia v. Randolph*
  547 U.S. 103 (2006) ...........................................................................................................19

*Hopkins v. Bonvicino*
  573 F.3d 752 (9th Cir. 2009) ...........................................................................................19

*Hunter v. Bryant*
  502 U.S. 224 (1991) ...........................................................................................................21

*Hydrick v. Hunter*
  500 F.3d 978 (9th Cir. 2007) ...........................................................................................20

*Illinois v. Gates*
  462 U.S. 213 (1983) .............................................................................................................8

*Intel Corp. v. Hartford Accident & Indem. Co.*
  952 F.2d 1551 (9th Cir. 1991) ...........................................................................................6

*Liberal v. Estrada*
  632 F.3d 1064 (9th Cir. 2011) .........................................................................................11

*Maag v. Wessler*
  960 F.2d 773 (9th Cir. 1991) .......................................................................................8, 21

*Maraziti v. First Interstate Bank of California*
  953 F.2d 520 (9th Cir. 1992) ...........................................................................................21

*Maryland v. Garrison*
  480 U.S. 79 (1987) .............................................................................................................19

*Matsushita Elec. Indus Co. v. Zenith Radio Corp.*
  475 U.S. 574 (1986) .............................................................................................................6

*Meyers v. City of Fresno*
  2011 WL 902115 (E.D. Cal. 2011).................................................................................24

iii

*Millender v. County of Los Angeles*
620 F.3d 1016 (9th Cir. 2010) ...........................................................................19

*Mincey v. Arizona*
437 U.S. 385 (1978) ............................................................................................10

*Monell v. New York City Dept. of Social Servs.*
436 U.S. 658 (1978) ............................................................................................20

*Muehler v. Mena*
544 U.S. 93 (2005) ..................................................................................13, 14, 15

*O'Toole v. Superior Court*
140 Cal.App.4th 488 (2006) ................................................................................23

*Ortega v. Sacramento County Dept. of Health and Human Servs.*
161 Cal.App.4th 713 (2008) ................................................................................25

*Pearson v. Callahan*
___ U.S. ___, 129 S.Ct. 808 (2009) ................................................................20, 21

*People v. Triplett*
144 Cal.App.3d 283 (1983) ...................................................................................9

*Reynolds v. County of San Diego*
84 F.3d 1162 (9th Cir. 1996) ...............................................................................21

*Rodis v. City and County of San Francisco*
558 F.3d 964 (9th Cir. 2009) ...............................................................................21

*Rupf v. Yan*
85 Cal. App.4th 411 (2000) ..............................................................16, 17, 19, 22

*Saucier v. Katz*
533 U.S. 194 (2001) ............................................................................................21

*Tater-Alexander v. Amerjan*
2011 WL 319012, 18 (E.D. Cal. 2011) ...............................................................24

*Taylor v. List*
880 F.2d 1040 (9th Cir. 1989) .............................................................................20

*Tolosko-Parker v. County of Sonoma*
2009 W.L. 49099, 5 (N.D. Cal. 2009) ................................................................24

*U.S. v. Black*
466 F.3d 1143 (9th Cir. 2006) ........................................................................10, 11

*U.S. v. Good*
780 F.2d 773 (9th Cir. 1986) ..........................................................................18, 19

*U.S. v. Stafford*
416 F.3d 1068 (9th Cir. 2005) ........................................................................10, 11

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

*Way v. County of Ventura*
  445 F.3d 1157 (9th Cir. 2006) ...................................................................................19

**Federal Statutes, Rules & Regulations**

Fed. Rules Civ.Proc., rule 56 ......................................................................................6

**California Statutes**

Cal. Rules of Court, rule 8.1125(d) ............................................................................7

Civ. Code, § 52.1(a) ..................................................................................................24

Civil Code § 52.1(j) ...................................................................................................24

Civil Code, § 52.1 .......................................................................................................1

Gov. Code, § 815.2 ....................................................................................................25

Gov. Code, § 820.2 ....................................................................................................25

Gov. Code, § 820.8 ....................................................................................................25

Pen. Code, § 1524 .............................................................................................. passim

Pen. Code, § 1524(10) ...............................................................................................18

Pen. Code, § 1524(a)(10) ...........................................................................................22

Pen. Code, § 847(b) ...................................................................................................23

Welf. & Inst. Code, § 5150 ................................................................................. passim

Welf. & Inst. Code, § 8102 ................................................................................. passim

# I.  INTRODUCTION

Plaintiffs seek partial summary judgment only as to the sixth cause of action for violation of the Fourth Amendment and seventh cause of action for false arrest as to plaintiff Oberg only, and the ninth and tenth causes of action brought under state law for trespass and violation of Cal. Civil Code § 52.1 as to both plaintiffs.[1]  Plaintiffs' motion misstates the evidence, ignores material facts, wholly disregards the well-established totality of the circumstances and objective reasonableness standards and misconstrues applicable authority. Notably, plaintiffs repeatedly misrepresent that defendants admitted no articulable facts justified a welfare check.  Even a cursory reading of the officers' deposition testimony reveals that this assertion is a plain misstatement of the evidence.  Plaintiffs similarly misstate the applicable law, relying on a depublished state appellate court decision and speculation as to what the California Supreme Court intended by its depublication of that case and its dismissal of review of that decision.

Plaintiffs fail to present evidence to support judgment in their favor, and the undisputed evidence in fact supports judgment in defendants' favor.  Cole's detention for a 5150 evaluation was supported by ample probable cause based upon the totality of the undisputed circumstances, and the officers' conduct was objectively reasonable and lawful.  Plaintiffs' unsupported, conclusory assertions are not evidence and are in fact directly contradicted by the evidence. Viewing the totality of the facts and circumstances known to the officers at the time of the incident in the light most favorable to defendants, and drawing all reasonable inferences in favor of defendants, plaintiffs fail to meet their burden to establish that they are entitled to judgment as a matter of law.

# I.        STATEMENT OF FACTS

Rather than presenting the facts of this case based upon the evidence, plaintiffs instead largely rely on their unsupported conclusions and arguments couched as facts.  The evidence, however, establishes the following:  On November 5, 2007, plaintiff Cole was angry with his mother and he telephoned her to express his anger.  When he was unable to reach her, he telephoned the Sunnyvale Police Dispatch and reported that his mother in Los Gatos needed help, then hung up without providing specific information.  Sunnyvale Dispatch called Cole back, and he again stated his mother in Los Gatos needed help, but he refused to be transferred to Los Gatos dispatch and he again hung up. Sunnyvale Dispatch noted in the

---

[1] See plaintiffs' MPA, page 5, specifying limited issues for partial summary judgment.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

CAD system, which provides written information to police officers via a video display in their patrol vehicles, that Cole had reported his mother in Los Gatos was not answering her phone, that he stated he was in Los Gatos although he was in Sunnyvale, and he hung up twice.[2]  City of Sunnyvale Police Officers Rocheville and Cortese were on duty in full uniform when, at approximately midnight, dispatch assigned them to conduct a welfare check at Cole's residence. Dispatch advised officers that it received a cell phone call from a male, later identified as Cole, reporting that his mother needed assistance in Los Gatos.  Dispatch further advised that Santa Cruz County Sheriff's had contacted Cole's mother at her residence, and she reported that Cole was possibly 5150. The CAD report also specifically noted "Subject sounds 5150 and disconnected again", which Officer Rocheville read before arriving at Cole's residence.[3]

Officer Rocheville arrived around midnight, parked his vehicle away from plaintiffs' residence and walked toward the house, stopping in the driveway area to listen. Cole was angry as he spoke with his mother over the telephone, the conversation was heated and Cole and his mother began arguing, yelling and speaking in loud elevated tones. Officer Cortese arrived on scene and met Officer Rocheville in the driveway, where the officers heard Cole loudly talking in a manner that sounded heated or upset. Cole loudly told his mother, "Things will be different tomorrow." The statement was made so loudly that the officers heard the statement outside of the house in the driveway and believed it was potentially a threat.[4] Within minutes, Cole's mother Nancy Cole telephoned Sunnyvale Dispatch and reported that Cole was not stable and he was calling and threatening her.  She reported that Cole repeatedly telephoned late at night and she did not answer, and when she finally answered he told her he was coming to her house and he said, "It will be over.  Don't mess with me."  Nancy also stated that Cole "shoots guns and stuff", that he was accustomed to having a firearm, but she did not know if he had any firearms on his person at the moment.  She also reported that Cole took Xanax for anxiety, and that he lived with his girlfriend and her two children.  Nancy said that she was frightened and she asked that police respond to Cole's residence to

---

[2]  To avoid unnecessary duplication of voluminous records, unless otherwise noted, evidentiary citations in support of the instant opposition refer to the evidence previously filed in support of defendants' motion for summary judgment, which is incorporated herein by reference (Court Documents DKT. #111-118 and 120-122.).  Defendants' motion is scheduled to be heard at the same time as this motion. Cole Depo., attached to Fox Declaration as Exh. A, 35:10-36:16, 36:21-23, 46:11-13, 46:23-47:2, 52:1-53:19, 59:5-22, 60:25-61:3, 136:5--17; Oberg Depo., attached to Fox Decl. as Exh. B, 71:15-17, 72:6-8, 73:25-74:2, 124:22-125:4; Dispatch Tape and Transcript of Recorded Dispatch Tape; CAD Report; Rocheville Depo. 92:4-21.
[3]  Rocheville Depo., attached to Fox Declaration as Exh. C, 70:19-25, 71:7-72:6, 78:15-20, 79:16-20, 86:22-88:10, 94:16-95:1, 95:25-96:2, 128:10-11; Cortese Depo., attached to Fox Decl. as Exh. D, 27:1-28:8, 50:7-10; Recorded Police Radio Traffic Tape and Transcript of Recorded Police Tape; CAD Report.
[4]  Cole Depo. 42:1-9, 54:5-14, 57:21-58:4, 136:5-11; Rocheville Depo. 96:24-97:25, 98:23-99:1, 99:18-22, 100:17-20, 103:23-104:6, 114:6-21, 130:5-8; Cortese Depo. 28:23-29:2, 33:8-15, 34:16-35:23, 39:14-24, 87:15-25.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

talk to him.[5] Dispatch related to the officers over the radio that Cole's mother called reporting that Cole was threatening her over the phone that he would go to her house in Los Gatos, and it advised the officers that Cole had a shotgun. Dispatch further advised that Nancy stated she knew Cole to be associated with guns in the past, but it was unknown whether he owned any. Dispatch advised that Cole was on Xanax, and that a girlfriend and two children also lived at the residence. The CAD report stated "Subj [Cole] is calling mom and threatening to come to her house – He said "It will be over" RP [Nancy Cole] says he has shot guns in the past and she does not know for sure if he had one but wud not be surprised".[6]

The officers approached the residence and contacted Cole at an open window near the entryway and asked to speak with him. Cole agreed and asked the officers to meet him at the garage to talk. Cole opened the garage door one-and-a-half to three feet and stepped aside to let the officers into the garage. He did not tell the officers they were not permitted to come inside and the officers entered the garage. Cole was asked to sit in a chair and he complied.[7] Officer Rocheville believed the statement he overheard to the effect "after tomorrow this will all be over" possibly was a threat that needed further investigation. Officer Rocheville questioned Cole about his mother and their telephone conversation. Cole refused to make eye contact with the officers, refused to answer any questions and refused to provide any information. Cole only gave basic information and confirmed he had been talking on the phone, and then stopped responding, had a blank, "catatonic" look staring straight ahead, and his body appeared to tense up, suggesting he was agitated. With the information from dispatch that Nancy reported Cole threatened her and was threatening to go to her house and that he took Xanax for anxiety, coupled with the statement the officers overheard and their observations of Cole's behavior, Officer Rocheville decided to detain Cole under § 5150 and placed him in handcuffs. Officer Rocheville then left the garage and telephoned Nancy. Nancy said she was not certain what Cole would do if he went to her home, and she feared for her safety if came to her home. She also confirmed that Cole was prescribed Xanax for anxiety.[8]

Lt. Hern was the supervising officer and he arrived on scene after Cole was detained. He was

---

[5] Dispatch Tape and Transcript of Recorded Dispatch Tape; Rocheville Depo. 132:15-133:10.
[6] CAD Report; Rocheville Depo. 102:16-19,103:8-14, 105:15-19 106:20-107:3, 107:15-24, 117:8-118:13, 132:15-133:19; Cortese Depo. 88:1-13; Recorded Police Radio Traffic Tape and Transcript of Recorded Police Tape.
[7] Cole Depo. 57:1-6, 58:5-10, 58:20-59:4, 61:22-62:5, 62:11-20, 63:23-64:2, 64:6-8, 64:18-24; Rocheville Depo. 109:5-7, 110:14-111:2, 117:8-118:13, 129:18-23; Cortese Depo. 34:16-35:23, 37:7-38:11, 38:21-24, 40:7-16, 41:19-20, 42:9-11, 42:19-43:20, 45:14-46:10.
[8] Cole Depo. 64:25-65:1, 65:14-19, 66:7-8, 67:14-16, 68:12-16, 71:15-20; Rocheville Depo. 112:13-113:18, 117:4-7, 120:6-121:18, 122: 22-24, 123:21-124:8, 126:17-127:7, 131:4-7, 132:3-134:18, 135:10-136:21, 138:6-141:5, 147:1-15; Cortese Depo. 46:11-16, 47:1-24, 89:15-23, 77:8-21, 78:17-79:14, 79:19-25, 80:7-81:12, 83:22-84:2, 86:13-22.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

briefed on the circumstances of the incident, and he tried to talk to Cole, explaining that he was there to assist him. Lt. Hern asked him about Nancy and what he meant by "Things will be different tomorrow", but Cole refused to answer, stating only, "I decline to answer." Lt. Hern found Cole's response very abnormal based on the numerous contacts he had with subjects during his years as a police officer. Cole asked the officers to write down their names and badge numbers, and Lt. Hern wrote the information on the back of his business card and placed it on a utility bench in the garage. Lt. Hern continued to ask questions, but Cole refused to listen and was "simply tuning them out" because he felt it was against his interests to respond, and Lt. Hern ceased questioning.[9] Cole now claims that Lt. Hern said, "Now you've pissed me off" and took his business card back, which eventually was given to Oberg.[10]

The officers received information over the radio that Oberg and her children also lived at the residence. Officer Rocheville asked Cole about Oberg and the children, whether they were at home and about their welfare, but Cole refused to respond to any questions and would not provide any information as to their whereabouts or condition. Given Cole's unusual behavior, his abnormal response to questions, that he refused to answer questions about Oberg and the children, and that the officers had no information about the conditions inside the residence, the officers were concerned about Oberg and the children's welfare and decided to conduct a welfare check of the residence to confirm they were safe. Cole objected to the officers' entry into the home and asked them to call a cell phone purportedly belonging to Oberg and ask her to come to the garage. The officers could not confirm that any phone number Cole provided was in fact Oberg's, or that she was the individual answering, and a telephone call would not confirm her safety.  Cole's objection to the officers physically contacting Oberg further raised their suspicions that Oberg and the children might be in danger, and given the circumstances and Cole's demeanor, the officers determined that they needed to directly contact the occupants to ensure their safety.[11]

Officers Rocheville and Cortese entered the residence to check on the welfare of Oberg and the children. They entered with their flashlights and announced their presence, but received no response. They walked further into the house looking for the occupants, since their purpose was to ensure the

---

[9] Hern Depo., attached to Fox Decl. as Exh. E., 24:1-5, 68:3-17, 73:7-14, 79:8-25; Cortese Depo. 55:18-20, 56:1-7; Cole Depo. 87:1-11; Hern Depo. 82:5-15, 82:20-23, 88: 21-14.)

[10] Cole Depo. 68:17-22, 69:7-15, 69:23-70:9, 75:6-76:3; Oberg Depo. 169:3-22; Hern Depo. 80:16-25, 83:16-24, 96:15-97:13, 103:2-104:5.

[11] Cole Depo. 70:19-71:3, 72:1-14; Oberg Depo. 44:19-22, 45:1-6; Rocheville Depo. 52:2-9, 52:24-53:3, 55:6-9, 144:17-145:5, 149:6-21, 150:5-13, 150:23-151:8, 151:17-23, 154:15-18; Cortese Depo. 48:3-8, 48:25-49:19, 53:4-54:1, 57:6-22, 58:5-59:21, 60:19-22; Hern Depo. 84:5-11, 86:4-24, 87:13-89:23.)

occupants' safety. Officer Cortese looked into a bedroom and observed the children sleeping.  He confirmed there were no signs of a disturbance in their room and that they appeared to be safe. The officers proceeded down the hall, shined their lights into another bedroom and announced their presence. When they contacted Oberg, Officer Rocheville said there was a problem with Cole and he asked her to come to the kitchen to talk to them about him. The officers walked back to the kitchen area and Oberg put a robe on over her pajamas and met them in the kitchen. Officer Rocheville asked Oberg if she was injured, and she said she was fine. He advised Oberg there was a problem involving Cole threatening his mother, and he tried to get information about Cole.[12]  Oberg then went into the garage and Lt. Hern explained why they were there and that Cole would not communicate with them, and he asked if she would assist them with information about Cole. Oberg approached Cole and they spoke in whispers. The officers were unable to gain any additional information from Cole, other than that he and Nancy did not have an amicable relationship. Given Cole's behavior, the officers believed he needed psychiatric help.[13]

Officer Rocheville exited the garage and telephoned Nancy again to obtain additional information about Cole's firearms possession.  Nancy reported that she had searched her house for Cole's firearm but she could not find it and she presumed that Cole had it in his possession, but she did not know exactly where. Lt. Hern advised Oberg that Cole had a handgun registered to him and they had information that he had shotguns, and he asked her where any firearms were located in the house.  Oberg was unaware that Cole had any handguns or a shotgun and she stated she did not believe they were at the house.[14]

Because Cole was being detained for a psychiatric evaluation, under Welf. & Inst. Code § 8102, officers were <u>required</u> to confiscate any firearms in Cole's possession.  The officers had information that Cole had a handgun registered to him, that he was known to possess firearms and that he might be in possession of a firearm.  Oberg in fact confirmed that at some point Cole owned a firearm, but she did not believe there were firearms on the property. Cole again refused to answer any questions or provide any information about firearms, occasionally responding, "I decline to answer" or "I decline to state."  Officer

---

[12] Oberg Depo. 75:21-24, 79:18-22, 82:23-24, 85:21-86:3, 86:9-23, 87:21-24, 89:19-90:15, 90:25-91:10, 92:16-21, 94:14-20, 98:11-14, 104:1-17, 105:25-106:3, 109:5-17; Rocheville Depo. 154:4-14, 155:15-18, 156:14-158:9, 158:22-159:20, 160:8-16; Cortese Depo. 64:14-65:1, 65:16-20, 66:4-9, 67:18-68:22, 70:12-25, 71:13-72:6, 73:3-12, 73:16-18, 74:22-75:5; Hern Depo. 93:25-94:10, 104:11-18.
[13] Cole Depo. 82:24-83:16; Oberg Depo. 94:12-17, 114:2-7; Hern Depo. 105:3-25, 106:9-23, 107:16-108:9, 109:15-18, 111:2-19, 113:25-115:12; Rocheville Depo. 135:10-136:21
[14] Rocheville Depo. 141:9-142:18, 146:6-21, 147:16-148:1; Oberg Depo. 99:13-100:23, 101:3-9, 101:19-23, 102:3-17; Hern Depo. 117:1-118:1, 118:10-17.

5

Cortese and Lt. Hern decided that Officer Cortese would conduct the search for firearms; Officer Rocheville was speaking with Nancy Cole and was not present at this time. Officer Cortese entered the house to search for the handgun.  He walked through the house and conducted a cursory search for the handgun without entering the children's rooms and completed the search in approximately five minutes without locating any firearm.[15]  Plaintiff subsequently was transported to Valley Medical Hospital for a psychiatric evaluation and released several hours later. Oberg was released when the officers left.[16]  The contact at plaintiffs' home  lasted less than one hour.

## III.  ARGUMENT

**A.    Plaintiffs Fail To Meet Their Burden To Justify Partial Summary Judgment In Their Favor**

"Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law." (Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987).) "The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial." (*Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).)  "The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought." (*Id., citing Matsushita Elec. Indus Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), and *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir. 1991).)

Plaintiffs wholly fail to meet their burden to show that, viewing the evidence most favorably to defendants, plaintiffs are clearly entitled to prevail on their sixth and seventh causes of action as to Oberg only, and the ninth and tenth causes of action for trespass and violation of Cal. Civil Code §52.1 as to both plaintiffs. Plaintiffs disregard and misrepresent the evidence, ignore the totality of the circumstances and rely on conclusory assertions that are not evidence. Additionally, plaintiff's interpretation of the applicable law is unsupported and incorrect.  Viewing defendants' supporting evidence liberally and drawing all reasonable inferences in favor of defendants, the instant Motion must be denied.

**B.    Plaintiffs' Representation Of The Applicable Statutes And Cases Is Incorrect**

---

[15] Cole Depo. 55:18-56:1070:10-18, 85:3-12, 104:19-23, 105:5-9,106:2-16, 108:1-3, 156;17-23; Oberg Depo. 48:25-49:14, 118:8-119:1, 113:16-24, 122:9-22, 166:22-167:3, 167:18-21, 168:11-19, 172:4-7; Cortese Depo. 91:18-92:7, 92:14-18, 92:24-94:15, 97:17-19, 98:1-3, 98:12-17, 100:2-7; Hern Depo. 124:3-17, 125:15-21, 126:23-127:4, 129:18-24
[16] Cole Depo. 79:16-21, 88:4-17, 92:4-6, 111:9-17; Oberg Depo. 166:13-21; Cortese Depo. 84:20-85:18, 86:13-22, 99:1-10.

Plaintiffs' claims arise out of Cole's 5150 mental health detention and the brief search of their residence to locate and confiscate weapons as required by Cal. Welf. & Inst. Code §8102, which provides:

> (a)     Whenever a person, who has been detained … for examination of his or her mental condition … is found to own, have in his or her possession or under his or her control, <u>any firearm whatsoever</u>, or any other deadly weapon, the firearm or other deadly weapon **shall be confiscated by any law enforcement agency or peace officer, who shall retain custody of the firearm or other deadly weapon.**  [Emphasis added.][17]

Plaintiffs incorrectly represent that a single depublished state appellate court case, decided two years after the incident in this case, conclusively establishes that Officer Cortese's search of the residence to locate Cole's firearms was unconstitutional.  They represent that the appellate court's decision in *People v. Sweig* noted that a statutory flaw existed because there was no provision for obtaining a warrant to search for weapons to be confiscated under §8102, and that the warrantless search to confiscate weapons violated the Fourth Amendment.  The State of California petitioned for review and the California Supreme Court granted certiorari and <u>depublished</u> the appellate court opinion.  Thereafter, the Legislature amended Cal. Penal Code §1524, providing that a search warrant may issue when the property to be seized is a weapon or firearm to be confiscated under § 8102, effective January 1, 2010.  The California Supreme Court subsequently discharged the petition in light of the amendment to § 1524.

Plaintiffs' argument that the California Supreme Court dismissing the petition without overturning the lower court decision means the depublished ruling is "effectively in place" as some sort of authority is meritless.   It is not citable as any authority.  They argue without support that dismissal of review without overturning the depublished appellate court decision establishes that "the Supreme Court acquiesced to the amendment of the statute and to the finding of constitutional violations.  No other inferences can be drawn from the Court's action, as anything further would be conjecture and speculation." This simply is incorrect.   Under Cal. Rules of Court 8.1125(d), "A Supreme Court order to depublish is not an expression of the court's opinion of the correctness of the result of the decision or of any law stated in the opinion."  Plaintiffs' attempt to rely on the California Supreme Court's dismissal of review as establishing any standard or a conclusive finding of constitutional violation in a depublished opinion is improper.

**C.     Plaintiff Oberg's Fourth Amendment Rights Were Not Violated And Her 42 U.S.C. § 1983 Claim Is Unsupportable**

---

[17]     The application of § 8102 in this case and the lawfulness of the search of plaintiffs' residence to confiscate weapons as required by § 8102 is discussed further in detail below.

7

Plaintiffs seek partial summary judgment of the sixth cause of action for violation of Oberg's Fourth Amendment rights under 42 U.S.C. § 1983.[18]  The undisputed evidence, however, establishes that Oberg's detention and the search of the residence were reasonable and her rights were not violated.[19]

1.    The First Search Of Plaintiff's Residence By Officers Rocheville And Cortese Was Reasonable And Did Not Violate Oberg's Fourth Amendment Rights

Officers Rocheville and Cortese's initial entry into plaintiffs' residence was a proper welfare search to ensure Oberg and her children's safety.  The undisputed evidence establishes that Cole was lawfully detained for a mental health evaluation under § 5150, and that the officers reasonably believed that checking on Oberg and her children's well-being was imperative.  Their conduct was objectively reasonable under the totality of the circumstances and did not violate Oberg's rights.

Ample probable cause supported Cole's detention for a mental health evaluation pursuant to § 5150.  (*Maag v. Wessler*, 960 F.2d 773, 775  (9th Cir. 1991);  *Bias v. Moynihan,* 508 F.3d 1212, 1218 (9th Cir. 2007).)  'Probable cause' by definition deals not with certainty, but with probabilities: "…the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."  (*Illinois v. Gates*, 462 U.S. 213, 231-232 (1983).)  "The Constitution does not guarantee that only the guilty will be arrested.  If it did, section 1983 would provide a cause of action for every defendant acquitted—indeed for every suspect released." (*Baker v. McCollan*, 443 U.S.137, 145 (1979).)  Police officers are not required to perform an error free investigation.  (*Id.*)   All that is required is that – as here—the facts fall on the side of probability. (*Brinegar v. U.S.*, 338 U.S. 160, 176 (1949); *Beier v. City of Lewiston,* 354 F.3d 1058, 1065 (9th Cir. 2004).) Under § 5150, probable cause exists for a mental health detention "if facts are known to the officer 'that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself.'…To justify the detention, the officer must point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion.'…'Each case must be decided on the facts

---

[18]    Plaintiffs' First and Fifth Amendment claims were dismissed without leave to amend.  (See Order dated 02/09/10.)
[19]    Contrary to plaintiffs' representation, the undisputed evidence establishes that, following Cole's request that the officers move from the front of the house to the garage to speak with him, Cole opened the door 1.5 to 3 feet wide to let them in, never protested their entrance and stepped back from the door specifically to allow them to enter. The officers' entry into the garage thus was lawful based on Cole's consent.  Plaintiffs, in any event, do not assert that the officers' entry into the garage was unlawful for purposes of the instant motion.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

and circumstances presented to the officer at the time of the detention and the officer is justified in taking into account the past conduct, character, and reputation of the detainee.'" (*Bias,* 508 F.3d at 1220; *People v. Triplett,* 144 Cal.App.3d 283, 287-88 (1983).)   "A peace officer…is not required to make a medical diagnosis of mental disorder.   It is sufficient if the officer, as a lay person, can articulate behavioral symptoms of mental disorder, either temporary or prolonged.   An all-encompassing lay definition of mental disorder is difficult if not impossible to formulate.   **But, generally mental disorder might be exhibited if a person's thought processes as evidenced by words or actions or emotional affect, are bizarre or inappropriate for the circumstances**." [Emphasis added.]   (*Triplett*, 144 Cal.App.3d at 288.)

In this case, the evidence amply establishes probable cause for Cole's § 5150 detention.   It is undisputed that: Cole told his mother "Things will be different tomorrow" in a loud, heated tone; Officers Rocheville and Cortese overheard the statement and believed it might be a threat; the officers were advised that Nancy called and reported Cole threatened her, he had shotguns in the past and that he was prescribed Xanax for anxiety; the location of firearms was unknown; Cole had twice hung up on 911 dispatchers trying to get information from him, and dispatch reported he sounded 5150; Cole refused to provide any information or answer any questions and instead stared straight ahead and refused eye contact with the officers, occasionally responding with "I decline to answer" or "I decline to state."   The officers thought he appeared "catatonic" because he stared straight ahead at nothing and would not look at them. Cole exhibited words, actions and affect that were inappropriate and bizarre for communicating with 911 dispatchers, his mother and uniformed police officers conducting a welfare check and attempting to clarify possibly threatening statements.   The totality of the circumstances establish that probable cause existed to believe that Cole was mentally disordered, and possibly a danger to himself or others, and his detention pursuant to § 5150 was reasonable.   This Court in fact previously found that even based only on the allegations of plaintiffs' complaints, "the officers had probable cause to seize plaintiff."   (See Order dated 02/09/2010, pp. 5-6.)   The officers were on scene conducting a "'5150 investigation' in response to a 911 call indicating that Mr. Cole may be a danger to himself or others.…Based on the information available to the officers (whether or not it was erroneous), the officers had probable cause to detain Mr. Cole, handcuff him, and place him into the chair."   (Id. 6:8-15.)   The undisputed evidence now further confirms that Cole's detention was reasonable under the circumstances as a matter of law.

Given that Cole was lawfully detained under § 5150, his mother reported he had threatened her, he

was known to possess firearms and he refused to provide any information regarding Oberg, her children or the whereabouts of any firearms, Officers Rocheville and Cortese's initial entry into plaintiffs' residence was a proper welfare search. The Supreme Court has long recognized "the right of the police to respond to emergency situations. …'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." (*Mincey v. Arizona*, 437 U.S. 385, 392 (1978).)   In *U.S. v. Black*, 466 F.3d 1143 (9th Cir. 2006), police went to Black's apartment to conduct a welfare search in response to a 911 domestic violence call in which the victim reported Black beat her up earlier in the apartment and he had a gun.  She stated she would meet the police outside the apartment, but they saw no sign of her.  They proceeded to the apartment and knocked but received no response.  The officers discovered Black in the backyard.  He denied knowing where the victim was and denied he lived at the apartment.  Officers obtained a key from Black, opened the door, made a quick sweep of the apartment, but found no one. The Ninth Circuit found that entry into Black's apartment was a lawful welfare search because officers feared the victim could be inside the apartment, badly injured and in need of medical attention, thus their warrantless search was justified by exigent circumstances, as Black could have again beaten or shot the victim. (*Id.* at 1145.) The Court noted:

> This is a case where the police would be harshly criticized had they not investigated and [the victim] was in fact in the apartment.  Erring on the side of caution is exactly what we expect of conscientious police officers.  This is a "welfare search" where rescue is the objective, rather than a search for crime.  We should not second-guess the officers objectively reasonable decision in such a case. [¶] Our circuit has recognized that "the exigencies of domestic abuse cases present dangers that, in an appropriate case, may override considerations of privacy."  (*Id.*)

The Court further noted that the entry also was justified under the "emergency aid" doctrine, which authorizes police to "enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.…Because this 'objective reasonableness' test is essentially the same as the one courts use to determine whether police action is justified under the 'exigent circumstances' exception", the Court also could find the entry was lawful under the emergency aid doctrine.  (*Id.* at 1146, fn.1, *citing Bingham City, Utah v. Stuart*, 547 U.S. 398, 403(2006).)

The emergency doctrine "allows law enforcement officers to enter and secure premises without a warrant when they are responding to a perceived emergency.…[because] in addition to their role as criminal investigators and law enforcers, the police also function as community caretakers."  (*U.S. v. Stafford*, 416 F.3d 1068, 1073 (9th Cir. 2005).) The emergency doctrine applies where, under the totality

1    of the circumstances, "(1) The police…have reasonable grounds to believe that there is an emergency at

2    hand and an immediate need for their assistance for the protection of life or property. (2) The search [is

3    not] primarily motivated by intent to arrest and seize evidence. (3) There [is] some reasonable basis,

4    approximating probable cause, to associate the emergency with the area or place to be searched." (*Id.*)

5        Officers Rocheville and Cortese's entry into plaintiffs' residence was objectively reasonable and

6    proper as a welfare check under the exigent circumstances exception <u>or</u> the emergency aid doctrine. Cole

7    was behaving in an abnormal manner and appeared to be mentally disordered under 5150, he had made

8    threatening statements to his mother, he had a firearm registered to him and was known to possess

9    firearms, and Cole refused to provide any information about Oberg or her children and their well-being,

10    thus the officers reasonably believed that Oberg and her children might be injured and in need of medical

11    attention, and that confirming their safety was imperative.  Indeed, as in *Black,* Officers' Rocheville and

12    Cortese would be harshly criticized had they not investigated and Oberg and her children in fact were in

13    the house in need of medical care.  Ensuring their safety was the only objective of the officers' entry into

14    the residence, and there is no evidence whatsoever that the officers had any criminal investigation or other

15    purpose.  Their entry to conduct a welfare search was objectively reasonable.

16        Plaintiffs' argument that the entry was unreasonable because Cole offered to provide a cell phone

17    number to contact Oberg and request her to come outside.  However, the evidence establishes that this

18    was not an acceptable alternative because the officers could not confirm that anyone they called was in

19    fact Oberg or that she and her children were safe.  More importantly, "just because 'protection of the

20    public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render

21    the search unreasonable.'" (*Stafford*, 416 F.3d at 1073 fn.2; *Cady v. Dombrowski,* 413 U.S. 433, 447

22    (1973); *Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002), "police officers need not [utilize] the

23    least intrusive means of responding and need only act 'within that range of conduct we identify as

24    reasonable.'")  Plaintiffs misrepresent that under *Liberal v. Estrada,* 632 F.3d 1064, 1080 (9th Cir. 2011),

25    "It is mandated that the least intrusive means be used in detaining someone or performing investigatory

26    actions" (MPA 11:5-7).  The cited authority contains no such mandate, and their assertion is directly

27    contrary to Ninth Circuit and Supreme Court authority.  Claims that the search was unreasonable because

28    officers should have telephoned instead of entering the home are unsupported in law and meritless.

       Plaintiffs' repeated assertion that the search was unreasonable because it was "admitted by

defendants, no articulable facts were present which would justify a welfare check" is a blatant misrepresentation of the evidence. (Plaintiffs' MPA 11:16-17, 13:9-11.) The officers' testimony shows, at best, that they did not believe that anyone was injured or in danger of injury <u>when they first arrived on scene, before any contact with plaintiff, and before they even overheard him arguing with his mother</u>. The evidence in fact shows that Cole testified in his deposition that after the officers contacted him he refused to look at them, answer any questions or provide any information, and he refused to listen and was "simply tuning them out". He occasionally responded, "I decline to answer". The officers interpreted his affect as blank and catatonic and they found his behavior abnormal.  When the officers learned from the police dispatcher that Oberg and her children also lived at the residence they asked Cole about Oberg and the children and their welfare, but Cole refused to respond and would not give them any information. The officers unequivocally testified that, given their observations of Cole and the information they had about his firearms possession, threatening statements to his mother and Oberg and her children's presence, they were concerned about Oberg and the children's welfare and decided to conduct a welfare check of the residence to confirm they were safe.  Their testimony does not admit, or even suggest, that "no articulable facts were present which would justify a welfare check" as repeatedly misrepresented.

Moreover, the officers' search of the home was brief and limited to confirming the safety of Oberg and her children.  The officers merely walked through the house looking for the occupants, and when Officer Cortese looked into a bedroom and observed the children were sleeping he confirmed there were no signs of a disturbance in their room and that they appeared to be safe, and he then proceeded down the hall without disturbing the children.  The officers shined their light into Oberg's bedroom and announced their presence, spoke to her in the hallway and confirmed she was safe.  The officers then retreated to the kitchen area to briefly speak with Oberg before she exited to the garage to speak with Cole.  Plaintiffs present no evidence that the officers' search of the residence was protracted or excessive in scope.

Plaintiffs ignore the applicable law and the evidence. Based upon the undisputed evidence, and drawing all reasonable inferences in favor of defendants, plaintiffs fail to meet their burden to present evidence showing that Officers Rocheville and Cortese's initial entry into the home to conduct a welfare check was objectively unreasonable as a matter of law.

2.   <u>Oberg Was Not Detained in Violation Of The Fourth Amendment</u>

Plaintiffs erroneously equate the initial welfare search of their residence with a Fourth

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Amendment seizure of Oberg's person, referring to the two interchangeably as the basis for Oberg's § 1983 claim. (Plaintiffs' MPA Section "VI".) They argue that the officers "seized plaintiff Oberg without any reasonable suspicion (or reasonable inference) that a person in the home was injured or needed assistance … by walking into a darkened home in the middle of the night with their flashlights on, and choosing to enter the home for purpose of forcing plaintiff Oberg to the garage." (MPA 11:8-15.) They further inexplicably assert that officers must have reasonable suspicion that a particular person detained is engaged in criminal activity and argue that Oberg posed no threat and the officers were not obligated to enter the home to protect anyone's safety, thus "the decision to enter the home to seize Ms. Oberg was unreasonable." (MPA 11:22-12:6.) Oberg's claim that she was unlawfully seized in violation of § 1983 is unsupportable for several reasons.

First, there is no evidence whatsoever that the officers entered the home for the purpose of seizing Oberg or forcing her to the garage as she claims. The officers testified that given the circumstances, they were concerned about Oberg and her children's welfare and they entered the house to check on their safety. The unsupported, conclusory assertions that the officers entered the house intending to seize Oberg are patently insufficient to support judgment in their favor.

Second, the search of plaintiffs' residence does not constitute a seizure of Oberg's person. A search of the premises is separate and distinct from a purported seizure of plaintiff's person, and the applicable law and relevant facts also are distinct. Plaintiffs present no authority that a welfare search, or any premises search, in itself constitutes a seizure of someone's person, or that anytime officers conduct a search they have effectively seized anyone present. Oberg cannot merely "piggyback" her unlawful seizure claim onto her unlawful search claim. Moreover, even if the search and seizure were interchangeable, the search of plaintiffs' residence was lawful under the officers' community caretaking function and could not form the basis for Oberg's unlawful seizure claim.

Third, Oberg was not seized and her Fourth Amendment rights were not implicated by the officers merely questioning her. It is well settled that a seizure is not automatically found each time a police officer approaches an individual and asks questions. (*Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Muehler v. Mena*, 544 U.S. 93, 98 (2005).) The evidence shows only that the officers simply asked Oberg to speak with them about Cole, the officers waited for her in the kitchen while she put on a bathrobe and Oberg briefly and voluntarily spoke to the officers in the kitchen. Oberg testified that she then walked

into the garage because she saw Cole sitting there; she did not testify that the officers forced her to the garage and there is no evidence to support this assertion.  (MPA 11:14-15.)  Oberg's own testimony shows that the officers briefly spoke to her about possible firearms on the premises, she was allowed to walk about the garage, stand near Cole and freely talk to him and she was never detained or arrested.  Oberg thus was not seized during the encounter.

Fourth, even if the officers' minimal contacts with Oberg constituted a seizure, it was reasonable under the totality of the circumstances and did not violate her rights. In *Mena, supra,* officers executing a search warrant for deadly weapons and evidence of gang membership detained occupants of the residence in handcuffs for two to three hours.  The officers were investigating a gang-related driveby shooting and believed that at least one member of the gang lived at the address and was armed and dangerous.  The search warrant authorized a broad search of the premises for deadly weapons, evidence of gang membership and other things.  The warrant was executed in the early morning hours, and Mena, a woman on the premises, was asleep in her bed when the SWAT team burst in and placed her in handcuffs at gunpoint.  She was then taken into a garage and detained in handcuffs for two to three hours while the search was executed.  (*Mena*, 544 U.S. at 95-97.)  The Supreme Court found that Mena's detention, even in handcuffs for two to three hours, was reasonable under the circumstances.  (*Id.* at 99, 102.)  "**An officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure**.... Mena's detention for the duration of the search was reasonable under *Summers* because a warrant existed to search … and she was an occupant of that address at the time of the search." (*Id*. at 98.)

In *Dawson v. City of Seattle,* 435 F.3d 1054 (9th Cir. 2006), inspection warrants were issued authorizing the Dept. of Public Housing (DPH) to search for evidence of rodent infestation.  The property owners previously threatened DPH inspectors and the warrant authorized police to assist in the inspection.  Police officers gathered the tenants of the houses and detained them for the duration of the search.  Some tenants were roused out of bed, patted down, questioned about contraband in their rooms and later arrested for possession of illegal substances.  The Ninth Circuit found that the detentions incident to the search were constitutionally permissible.  "To determine whether a detention incident to a search is constitutionally reasonable, we balance the law enforcement interests served by the detention against the public's privacy interests.…we have recognized that detaining a building's occupants serves at least three

law enforcement interests:  first, detention prevents a suspect from fleeing before the police discover contraband; second, detention minimizes the risk that an officer or an occupant might be harmed during the search; and third, detention often expedites a search."  (*Id.* at 1065-66.)

> [T]he United States Supreme Court recently held that 'an officer's authority to detain incident to a search is *categorical;* it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'… We interpret the Supreme Court's language to mean that the duration of a detention may be coextensive with the period of a search, and require no further justification. (*Id.* at 1066, *citing Mena,* 544 U.S. 93.)

The Supreme Court doctrine permitting police to detain individuals during a search, and the principle that the authority to detain incident to search is categorical, **apply to all searches upon probable cause, not just to searches for contraband.**  (*Id.*)  Indeed, even apart from an officer's categorical authority to detain a building's occupants while the officer searches it, the law enforcement interests in safely and effectively conducting residential searches amply justify the police detention.  (*Id.*) "The risk of harm to both the police and occupants is minimized if the officers routinely exercise unquestioned command of the situation." (*Id.* at 1067.)  The officers were conducting a search for serious public health hazards, against the property manager's will, and the tenants may have fled instead of being available to assist the officers, and allowing occupants to roam freely during the search increased the risk of injury to the officers and others, thus the detentions were reasonable. (*Id.*) Questioning detainees about weapons or outstanding warrants, denying requests to smoke or use the bathroom alone, and denying a barefooted detainee's request for shoes despite glass on the floor was reasonable.  (*Id.* at 1068-69.) The detentions and the manner of the detentions were constitutionally permissible. (*Id.* at 1070.)

Oberg's detention in this case likewise was reasonable.  The officers had probable cause to detain Cole for a 5150 evaluation and they had information that Cole had a firearm registered to him and was known to possess firearms, which they were statutorily required to confiscate.  The officers' brief questioning about Cole and his firearms possession was objectively reasonable under the circumstances. The manner of Oberg's detention also was reasonable as she was allowed to move about the garage, stand next to Cole and speak with him, she was never handcuffed or physically restrained and she was released when the officers left.  Oberg's brief detention did not violate her Fourth Amendment rights.

3.   Officer Cortese's Second Search Of The Residence For Weapons Was Lawful Under Welf. & Inst. Code § 8102

California Welf. & Inst. Code   § 8102 was enacted as "an urgency statute necessary for the

immediate preservation of the public peace, health or safety" in response to an appellate court decision finding the prior version of the statute violated procedural due process regarding return of confiscated weapons.  (Section 3 of Stats. 1989, c. 921.)  Urgent passage was deemed necessary because "It is essential that a constitutionally sound mechanism authorizing a procedure for the confiscation of firearms or other deadly weapons in the hands of persons taken into custody for evaluation of their mental condition, always be available to law enforcement agencies. [¶]  The case of *Bryte v. City of La Mesa,* 207 Cal.App.3d 687 (1989)[20] … cast doubt upon the validity of the current statutory authority regarding confiscation of these weapons.  This doubt and the great danger which would result if law enforcement agencies are left with no statutory authority to confiscate these weapons, make it necessary that this bill take effect immediately."  Section 8102 contained no requirement that officers obtain a search warrant before searching for weapons to be confiscated, and the lack of any such requirement appears intentional, particularly given the Legislature's express concern that officers immediately have a "constitutionally sound mechanism authorizing a procedure to seize firearms or other deadly weapons" in the possession of 5150 detainees.  The language of § 8102 expressly required officers to confiscate firearms and deadly weapons owned, possessed or in control of the detainee, without limitation to weapons in the immediate vicinity or immediately accessible to the detainee, demonstrating that the Legislature intended to authorize a search and seizure without a warrant to accomplish the immediate removal of weapons from a detainee's control.   The object of § 8102 is to provide "a means whereby authorities can confiscate firearms in an emergency situation and [to] keep firearms from mentally unstable persons.   "The legislative history of the statute expressly recognizes the urgency and importance of such an objective…" (*Rupf v. Yan*, 85 Cal. App.4th 411, 422 (2000).) "The Legislature could reasonably believe that whatever the precipitating incident, persons being detained for section 5150 observation under circumstances where it appeared they were mentally unstable and presented a danger to themselves or to others should be denied access to firearms they owned or possessed and that in such emergency circumstances, the police should be allowed to confiscate such firearms."  (*Id.*)  "Section 8102 directly safeguards public health and safety by allowing law enforcement officers to confiscate any firearm in the possession or control of a person who is appropriately detained or apprehended for a mental examination.  Keeping a firearm away

---

[20]  In *Bryte, supra*, officers confiscated weapons from the dwelling of a 5150 detainee.  The former version of § 8102 did not provide an adequate remedy for return of the seized property, thus violating procedural due process requirements.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

from a mentally unstable person is a reasonable exercise of the police power. It is not unreasonable to conclude there is a significant risk that a mentally unstable gun owner will harm himself or others with the weapon." (*Id.* at 423.)

In *Rupf,* a deputy sheriff responded to the hospital after Yan was admitted for a prescription medication overdose. Based on information gathered from Yan and his family, the deputy detained Yan for a 5150 evaluation. During his investigation, the deputy learned that numerous firearms were at Yan's residence. The deputy later went to Yan's residence and found four firearms, which he confiscated pursuant to § 8102. (*Id.* at 418.) Yan challenged the constitutionality of § 8102 on its face and as applied to him, claiming there is no relation between the legislative intent behind § 8102 and its application and that it was vague and overbroad. (*Id.* at 417.) The appellate court rejected Yan's claims, reiterating the urgent importance of keeping firearms away from mentally unstable persons and the legislative intent to safeguard public health and safety by authorizing law enforcement officers to confiscate any firearm in the possession or control of a 5150 detainee. (*Id.* at 422-23.) The court did not limit police authority to confiscate firearms under § 8102 to instances where a search warrant was obtained, it did mention any warrant requirement, and indeed the facts of the case indicated that the deputy did not have a search warrant at the time he went to Yan's house, found the firearms and seized them. The court specifically rejected Yan's argument that § 8102 was overinclusive because it did not limit confiscation "to weapons in the immediate physical proximity or control of the person detained, but extends to those 'owned' by the section 5150 detainee." (*Id.* at 424-25.) "The Legislature has expressly cited the 'great danger which would result if law enforcement agencies' lacked authority to confiscate weapons from such individuals." (*Id.* at 425.) Confiscation of weapons under § 8102 thus is justified by the urgent need to keep such weapons away from mentally unstable persons, regardless of the location of the weapon and without any requirement that officers first obtain a warrant.

Similarly, Penal Code § 1524 specifying the grounds on which a search warrant may be issued that was in effect at the time of Cole's detention contained no requirement or provision for a search warrant related to confiscating weapons under § 8102. Indeed, § 1524 concerned only searches related to <u>criminal</u> investigations, and only was amended in 2010 to include a provision for a search warrant to issue for the seizure of firearms or other deadly weapons under § 8102, which is intended to safeguard public health and safety, not to proscribe criminal conduct. The numerous prior versions of §1524 likewise contained

no such provisions, notwithstanding the express statutory requirement that officers confiscate weapons owned, possessed or under the control of 5150 detainees.  The statutory scheme of § 8102 and § 1524 in effect at the time of Cole's detention thus did <u>not</u> require a search warrant.

Indeed the amended provision authorizing a warrant to confiscate weapons under § 8102 requires nothing more than that confiscation is made pursuant to § 8102.  (Penal Code §1524 (10).)  No additional showing is required.  The amendment thus appears to be a mere formality expressly authorizing what was previously implicit in § 8102 itself and as evidenced by the Legislative history and intent behind § 8102.

Cole was detained for a mental health evaluation, and under the express language of § 8102, the officers were <u>required</u> to confiscate any firearms or other deadly weapon in his possession or under his control. Officer Cortese's search of the residence for any firearms thus was reasonable and necessary for the officers to fulfill their statutory duty to confiscate all firearms or deadly weapons in Cole's possession. The search also was brief, lasting only 5 minutes and limited in scope to places a handgun might be kept. No firearms were located and nothing was seized as a result of the brief search.  Officer Cortese's second search of the residence was authorized under § 8102 and lawful.

The search also was proper under the community caretaking exception.  Given that Oberg and her children lived with Cole, Cole was exhibiting bizarre behavior, was known to possess firearms and refused to give any information as to their whereabouts, it was objectively reasonable for Officer Cortese to enter the residence and briefly search for weapons.[21]  The officers had no control over the length of time Cole would be evaluated at the hospital and prompt entry into the house to search for weapons was necessary to protect the occupants and others because Cole may have been quickly released and returned to the residence, only to harm Oberg, her children or someone else, with any firearm he might possess. The warrantless entry thus was objectively reasonable under the community caretaker exception.

Plaintiffs' cited authorities fail to establish that Officer Cortese's brief search pursuant to § 8102 violated the Fourth Amendment.  The authorities cited involve exceptions to the warrant requirement in criminal matters and are inapposite.  For example, in *U.S. v. Good,* 780 F.2d 773 (9th Cir. 1986), officers attempting to locate a stabbing victim lawfully entered Good's residence based on the exigent circumstances exception to the warrant requirement, and in the subsequent criminal prosecution

---

[21]   Officer Rocheville did not participate in the second search and cannot be liable for any civil rights violation based upon the second search.

suppression of the firearm seized was unwarranted. The court noted that for the exigent circumstances exception to apply, the government was required to show both exigent circumstances and that a warrant could not have been obtained in time, which was shown because the delay in obtaining a telephonic warrant would unduly increase the risk to the stabbing victim believed to be in the residence. (*Id.* at 775.) *Good* is unavailing here because Officer Cortese did not search the residence for Cole's firearms under the exigent circumstances exception. Rather, the search was made based upon the requirements of § 8102. *Good* did not involve § 8102 and is irrelevant. *Hopkins v. Bonvicino*, 573 F.3d 752 (9th Cir. 2009) likewise is irrelevant as it did not involve a § 5150 detention or confiscation of weapons under § 8102. Plaintiffs assertion that defendants were required to obtain a warrant "when they established no one capable of using a gun was still in the house" is unsupported in law or fact, and their citation to *Millender v. County of Los Angeles*, 620 F.3d 1016 (9th Cir. 2010) in support of this assertion is unavailing. In *Millender*, a search warrant was obtained and the issue there was the validity of the warrant, which appeared to exceed the scope of the underlying criminal violation. Again, *Millender* did not involve §§ 5150 or 8102, and fails to support the argument for which it is cited. Similarly, plaintiffs' citation to *Maryland v. Garrison,* 480 U.S. 79, 87 (1987) does not contain the quote represented; *Georgia v. Randolph*, 547 U.S. 103, 126 (2006) references a concurring opinion; *Way v. County of Ventura*, 445 F.3d 1157, 1160 (9th Cir. 2006) involves the unlawfulness of a body cavity search for misdemeanor charges. None of these authorities relate to §§ 5150 or 8102.

Defendants do not claim that their search of plaintiffs' residence to confiscate weapons under § 8102 was the result of a mistake of law as plaintiffs assert. Their reliance on numerous out of circuit cases regarding vehicle stops and officers' mistakes as to what criminal law proscribed thus are irrelevant.

Plaintiffs' representation that a warrant to search was clearly required under § 8102 "since § 8102 has already been determined to be unambiguous" and their citation to *Rupf v. Yan, supra*, is incorrect and appears intentionally misleading. Yan's vagueness argument related to "the standard allowing authorities to <u>retain</u> confiscated weapons", not to an officers' authority to confiscate weapons without a warrant. (*Rupf*, 85 Cal.App.4th 425-26.) *Rupf* did not involve the validity of a warrantless search for weapons to be confiscated under §8102, and indeed suggests that Yan's firearms were confiscated pursuant to a warrantless search, which was not challenged or disapproved by the court's decision. In fact, the court repeatedly emphasized the Legislature's finding of urgency and importance that law enforcement officers

are authorized to promptly confiscate weapons possibly accessible to mentally unstable persons.

Plaintiff presented no authority that a warrant was required to search their residence to confiscate weapons as mandated by § 8102.  Defendants' brief 5 minute search, which did not result in confiscation of anything or criminal prosecution of plaintiffs, was objectively reasonable under the circumstances and the law.  Oberg is not entitled to partial summary judgment on this issue.

4.    Defendants Cannot Be Held Vicariously Liable Under § 1983 And Chief Johnson And Capt. Fitzgerald Are Not Individually Liable

It is well settled that, under § 1983, Government officials and supervisors may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  (*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009); *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978).)  Under § 1983, a supervisor is liable for the constitutional violations of subordinates only "'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)."  (*Hydrick v. Hunter* 500 F.3d 978, 988 (9th Cir. 2007).) The undisputed evidence in this case establishes that Lt. Hern was not present at the scene until after Cole already was detained, and he was not present when Officer Rocheville transferred him to the hospital.  Lt. Hern did not participate in or direct any constitutional violation, and there is no evidence that he knew of any such violation and failed to prevent it.  Oberg's detention and the searches also were reasonable.  Plaintiffs establish no basis for liability against Lt. Hern, including supervisory liability, under §1983.  It is undisputed that Chief Johnson and Capt. Fitzgerald did not personally participate in any part of the detention or search and only learned of the incident after the fact.  Plaintiffs' claims against Chief Johnson and Capt. Fitzgerald are wholly unsupported.

**D.    The Officers Are Entitled To Qualified Immunity From Plaintiffs' Federal Claims**

Qualified immunity shields government officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known....The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  (*Pearson v. Callahan*,__U.S.__, 129 S.Ct. 808, 815 (2009).) Officers are entitled to qualified immunity "as long as a reasonable officer could have believed the conduct lawful", notwithstanding that reasonable officers could disagree on that issue.  (*Alexander v. County of Los Angeles,* 64 F.3d 1315, 1322 (9th Cir.

1995)[22]; (*Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996).[23])  The court discerns whether the officer "acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable interpretation of the events can be constructed…after the fact." (*Hunter v. Bryant,* 502 U.S. 224, 228 (1991).)  Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." (*Id.* at 227.)

The inquiry as to whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition."  (*Saucier v. Katz,* 533 U.S. 194, 205 (2001).)[24]  The right allegedly violated "must have been 'clearly established' in a more particularized, and hence more relevant sense . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." (*Id.* at 202.)  Qualified immunity recognizes "that reasonable mistakes can be made as to the legal constraints on particular police conduct. . . . If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense." (*Brousseau v. Haugen,* 543 U.S. 194, 205 (2004).)  **It is plaintiff's burden to prove that the law governing the officers' conduct was "clearly established."**  (*Maraziti v. First Interstate Bank of Cal.,* 953 F.2d 520, 523 (9th Cir. 1992).)

Accordingly, in determining whether the law is clearly established for a particular mental health detention, it is not enough to "determine the broad question of whether the seizure of [the detainee] violated the fourth amendment's proscription against unreasonable seizures … To do so would merely state [the detainee's] right in the abstract, rather than his rights under the particular circumstances of [the] case as the Supreme Court has mandated." (*Maag,* 960 F.2d at 775.)  Moreover, "The Supreme Court has 'recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present.'…In such cases those officials should not be held personally liable." [Citations omitted.]  (*Rodis v. City and County of San Francisco*, 558 F.3d 964, 970-71 (9th Cir. 2009), *citing Hunter, supra, and Anderson v. Creighton,* 483 U.S. 635, 641 (1987).)

The officers are entitled to immunity from plaintiffs' unlawful search claims.  The undisputed evidence shows that Cole was exhibiting bizarre behavior, the officers knew firsthand and from

---

[22] Overruled in part on other unrelated grounds, as stated in *Ashley v. Sutton*, 492 F.Supp.2d 1230, 1252 (Dist. Ore. 2007).
[23] Overruled in part on other unrelated grounds, *Acri v. Varian Assoc.,* 114 F.3d 999 (9th Cir. 1997).
[24] Overruled in part on the grounds that the *Saucier* qualified immunity analysis procedure is not mandatory, but is helpful and may be followed in the Court's discretion. (*Pearson,* 129 S.Ct. at 813, 818.)

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

dispatch reports that he had made threatening remarks, he was known to possess firearms and other people resided at the residence. The officers' search of the premises to ensure the safety of the occupants was reasonable, and even if they were mistaken in believing Oberg and the children might be injured and in need of help, their belief was reasonable and qualified immunity applies.

Qualified immunity also applies to the second search for weapons.  Cole was detained under § 5150, and under § 8102's mandate that firearms or any deadly weapon "**shall be confiscated by any law enforcement agency or peace officer, who shall retain custody of the firearm or other deadly weapon**", the officers were *required* to confiscate firearms in Cole's possession.  Under Penal Code § 1524 in effect at the time of the incident, confiscation of weapons under § 8102 was not mentioned, and there was nothing in § 8102 or § 1524 indicating any need to obtain a search warrant before searching for and confiscating firearms possessed by detainees.[25]  Indeed, § 8102 required officers to confiscate firearms in a 5150 detainee's possession since at least the 2002 version of the statute, and never required or referenced the need for a warrant in order to fulfill its mandatory requirement of confiscating weapons.  As discussed fully above, *Rupf, supra,* a case decided in 2000, also emphasized the unique nature of § 8102 and the Legislative interest and intent in enacting § 8102 as a means of authorizing police to promptly confiscate weapons owned by mentally unstable persons, even when the weapons were not immediately accessible, based upon the urgency and severity of harm that could potentially result from a mentally unstable person having access to weapons.  The *Rupf* court did not even hint at any necessity of obtaining a warrant to search and confiscate weapons pursuant to § 8102.

Penal Code § 1524 only was amended <u>long after the incident in November 2007,</u> effective January 1, 2010, to now provide that a search warrant may be issued for weapons owned or possessed by a 5150 detainee as described in § 8102.  (See current version of Penal Code § 1524(a)(10).)  Accordingly, the law was <u>not</u> clearly established in November 2007 that officers were required to obtain a search warrant in order to fulfill the express statutory requirement that they confiscate weapons in the possession or control of 5150 detainees.  Reasonable officers in the same situation could have believed that a warrantless search of the residence to locate and confiscate firearms was lawful under § 8102 and the undisputed circumstances.  Plaintiffs cannot meet their burden to show that the law was clearly established prohibiting such search.  That the Fourth Amendment generally proscribes unlawful seizures is

1    insufficient to defeat qualified immunity.  The officers are entitled to qualified immunity

2         Oberg's brief detention while the officers asked her about Cole and his firearms possession and

3    during the 5 minute search of the residence for firearms was lawful and did not violate her rights.

4    Plaintiffs cannot show that the law was clearly established prohibiting her detention under the

5    circumstances and the officers are qualifiedly immune from her § 1983 unlawful detention claim.

6         Plaintiffs' argument that the law was clearly established as to reasonable suspicion and probable

7    cause necessary to seize and search a criminal suspect is unavailing.  Plaintiffs were not suspects or seized

8    in any criminal matter, and they have not identified any authority that defendants were *only* permitted to

9    seize plaintiffs based on reasonable suspicion that a crime had been committed.  Plaintiffs' unsupported

10   argument that the law was clearly established that a state statute could never authorize a warrantless home

11   entry does not defeat qualified immunity.  The Fourth Amendment proscribes *unreasonable* searches and

12   seizures, and the courts have construed the types of conduct that is considered reasonable and

13   unreasonable.  Courts also have created exceptions to the Fourth Amendment warrant requirement.  The

14   officers' belief that the Legislature, in enacting § 8102 likewise created an exception to the Fourth

15   Amendment warrant requirement thus was reasonable and plaintiffs have not identified any authority

16   otherwise.  Plaintiffs fail to meet their burden to show the law was clearly established, and the officers are

17   entitled to qualified immunity.

18   **E.    Oberg's State Law False Imprisonment Claim Is Unsupportable**

19        As developed above, plaintiffs were lawfully detained because probable cause existed for Oberg's

20   limited detention during the search.  (*O'Toole v. Superior Court*, 140 Cal.App.4th 488, 511-512 (2006);

21   Penal Code § 847, "(b) There shall be no civil liability on the part of, and no cause of action shall arise

22   against, any peace officer…for false arrest or false imprisonment arising out of any arrest…[where] (1)

23   The arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the

24   arrest was lawful…".)  Oberg's detention was lawful and her false arrest claims thus are unsupportable.

25   **F.    Plaintiffs' Trespass Claim Is Unsupportable**

26        As detailed above, the entry onto the property and search of plaintiffs' residence was objectively

27   reasonable under the totality of the circumstances and lawful.  Plaintiffs' trespass claim thus must fail.

28   **G.    Plaintiff's Claim For Violation Of Civil Code § 52.1 Is Unsupported**

---

25        See Penal Code § 1524, 2007 version, (effective 01/91/07 – 12/31/09) attached to Request For Judicial Notice.

Section 52.1 proscribes interference or attempted interference by threats, intimidation or coercion with rights secured by the Constitution or laws of the United States.  (Civil Code § 52.1(a); *Barsamian v. City of Kingsburgh*, 597. F.Supp.2d 1054, 1057 (E.D. Cal. 2009).)  "<u>Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing that the speech itself threatens violence</u> against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat."  (Civil Code § 52.1(j).) Section 52.1 does not extend to regular tort actions. (*Meyers v. City of Fresno,* 2011 WL 902115 (E.D. Cal. 2011).)  "The necessary elements for a section 52.1 claim are: "(1) defendants interfered with plaintiff's constitutional rights <u>by threatening or committing violent acts</u>; (2) that plaintiff reasonably believed that if she exercised her constitutional rights, defendants would commit violence against her property; (3) plaintiff was harmed; and (4) defendants' conduct was a substantial factor in causing plaintiff's harm.""  (*Tolosko-Parker v. County of Sonoma,* 2009 W.L. 49099, 5 (N.D. Cal. 2009).)  "'A threat "involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm."… Intimidation means to "make timid or fearful." *Ex Parte Bell,* 19 Cal.2d 488, 526, 122 P.2d 22 (1942). Coercion is 'the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.'" (*Meyers v. City of Fresno*, 2011 WL 902115, 7 (E.D. Cal. 2011).)  Plaintiffs fail to present any evidence in this case to support a claim for violation of 52.1.  As discussed fully above, the officers actions did not violate plaintiffs' rights, and there is no evidence at all that any of the officers used threats, coercion, intimidation or violence against plaintiffs. Plaintiffs' § 52.1 claim is unsupportable.

Plaintiffs' reliance on *Cole v. Doe,* 387 F.Supp.2d 1084, 1103 (N.D. Cal. 2005) is unavailing. Plaintiff there was handcuffed in a police vehicle and threatened that he would not be released unless he consented to a search of his trunk.  The officers' conduct there violated § 52.1 because the plaintiff had committed no violation and his detention was unsupported by probable cause, and the officers detained him to coerce his consent to search his trunk.  By contrast, the evidence in this case shows that probable cause justified plaintiffs' detentions and the search of their residence.  Plaintiffs also present no evidence of any threats, intimidation or coercion.  (*Tater-Alexander v. Amerjan,* 2011 WL 319012, 18 (E.D. Cal. 2011).)  They are not entitled to summary judgment on this issue.

**H.      Defendants Are Immune From Liability For Plaintiffs' State Law Torts**

Defendants are immune from liability under Govt. Code § 820.2, for acts resulting from "the exercise of the discretion…whether or not such discretion be abused." "The Legislature has determined that government could not function if its employees were subject to liability for their discretionary acts, even where the discretion is exercised badly." (*Ortega v. Sacramento County Dept. of Health and Human Servs.* (2008) 161 Cal.App.4th 713, 716.) "[P]ublic employees are *immune* for their discretionary acts, even those which constitute breaches of actionable duty, unless a statute otherwise provides." (*Caldwell v. Montoya* (1995) 20 Cal.4th 972, 986.) "[T]he exercise of discretion invariably details the collection and evaluation of information.  Thus, the collection and evaluation of information is an integral part of 'the exercise of the discretion' immunized by section 820.2." [Emphasis added.] (*Ortega,* 161 Cal.App.4th at 733.)  The officers' decision to detain plaintiffs and to search the premises necessarily involved personal deliberation, decision and judgment, and their exercise of discretion is subject to immunity under § 820.2.

The City is immune from liability under Govt. Code § 815.2, which provides immunity for a public entity to the same extent its employee is immune, and Chief Johnson and Capt. Fitzgerald are immune under Govt. Code 820.8 because it is undisputed that they did not direct or participate in the incident and they cannot be liable for the acts of other employees.

**I.      Objections To Plaintiffs' Evidence**

Defendants object to plaintiffs' purported evidence consisting of unsupported conclusions and misstatements of the evidence.  Plaintiffs' conclusory mischaracterization of the cited deposition testimony is improper and insufficient to support judgment in their favor.

## IV.  CONCLUSION

For the foregoing reasons and the reasons set forth in defendants' motion for summary judgment, defendants respectfully submit plaintiffs are not entitled to partial summary judgment on any of their claims.  Plaintiffs' motion should be denied.

Dated:  May 25, 2011                    BERTRAND, FOX & ELLIOT


By:_____/s/_____
         Gregory M. Fox
         Attorneys for Defendants
         CITY OF SUNNYVALE, CHIEF DON JOHNSON,
         CAPT. KELLY FITZGERALD, OFFICER STEVEN ROCHEVILLE,
         LIEUTENANT TRACY HERN and OFFICER SCOTT CORTESE