1   Gregory M. Fox, State Bar No. 070876
    Dana L. Soong, State Bar No. 168160
2   BERTRAND, FOX & ELLIOT
    The Waterfront Building
3   2749 Hyde Street
    San Francisco, California 94109
4   Telephone:    (415) 353-0999
    Facsimile:    (415) 353-0990
5
6   Attorneys for Defendants CITY OF SUNNYVALE,
    CHIEF DON JOHNSON, CAPT.KELLY FITZGERALD.
7   OFFICER STEVEN ROCHEVILLE, LIEUTENANT TRACY HERN
    and OFFICER SCOTT CORTESE
8
9                       UNITED STATE DISTRICT COURT
10                      NORTHERN DISTRICT OF CALIFORNIA
11
12  RUSSELL COLE and STEPHANIE OBERG,        Case No.:  C08-05017 RMW
13              Plaintiffs,                   **DEFENDANTS CITY OF SUNNYVALE,
                                              CHIEF DON JOHNSON, CAPT. KELLY
            vs.                               FITZGERALD, OFFICER STEVEN
14                                            ROCHEVILLE, LIEUTENANT TRACY
    CITY OF SUNNYVALE, CHIEF DON              HERN AND OFFICER SCOTT CORTESE'S
15  JOHNSON, CAPT. KELLY FITZGERALD,         REPLY TO OPPOSITION TO MOTION
    OFFICER STEVEN ROCHEVILLE,               FOR SUMMARY JUDGMENT, OR IN THE
16  LIEUTENANT TRACY HERN and OFFICER         ALTERNATIVE PARTIAL SUMMARY
    SCOTT CORTESE,                            JUDGMENT**
17
            Defendants.                       Date:   June 17, 2011
18                                            Time:  9:00 a.m.
                                              Courtroom 6, 4th Floor, San Jose
19
20                                            Honorable Ronald M. Whyte
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................1

II.  ARGUMENT ............................................................................................1

    A.  Plaintiffs' Section 1983 Claim Is Unsupportable ...........................................1

        1.  The Officers' Entrance Into The Garage Was Lawful.........................................

        2.  Probable Cause Supported Cole's Detention For Psychiatric Evaluation Under § 5150 ..............................................................3

        3.  The First Search Of the Residence By Officers Rocheville and Cortese Was Reasonable..............................................................4

        4.  Officer Cortese's Search For Weapons Was Lawful Under Welf. & Inst. Code § 8102 ..............................................................6

        5.  The Minimal Force Used To Effectuate Cole's Detention Was Reasonable ............................................................................7

        6.  Oberg Was Not Detained In Violation Of The Fourth Amendment................8

        7.  Defendants Are Not Vicariously Liable Under § 1983 and Chief Johnson And Capt. Fitzgerald Are Not Individually Liable ...........................9

    B.  The Officers Are Entitled To Qualified Immunity From Plaintiffs' Federal Claims ..............................................................................9

    C.  The Undisputed Evidence Establishes That Plaintiffs' Monell Claims Are Unsupportable .................................................................12

    D.  Plaintiffs' State Law False Imprisonment Claim Is Unsupportable ...........................13

    E.  The Intentional Infliction Of Emotional Distress And Trespass Claims Are Unsupportable .................................................................13

    F.  Plaintiffs' Claim For Violation Of Civil Code § 52.1 Is Unsupportable ...................14

    G.  The Evidence Fails To Support A Civil Conspiracy Or Aiding and Abetting Claim ...........................................................................14

    H.  The Undisputed Evidence Fails To Support Plaintiffs' Negligence Claim ................14

    I.  Defendants Are Immune From Liability For Plaintiffs' State Law Torts ..................14

i

J.    Objections To Plaintiffs' Evidence ................................................................15

III.    CONCLUSION ................................................................................................15

DEFENDANTS' REPLY TO OPPOSITION TO MOTION/MOTION FOR SUMMARY JUDGMENT

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Acri v. Varian Assoc.*
    114 F.3d 999 (9th Cir. 1997) .................................................................9

4

5

*Anderson v. Creighton*
    483 U.S. 635 (1987) .......................................................................10

6

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*
    7 Cal.4th 503 (1994) .......................................................................14

7

8

*Aquino v. Superior Court*
    21 Cal. App. 4th 847 (1993) .................................................................14

9

*Bingham City Utah v. Stuart*
    547 U.S. 398 (2006) .........................................................................4

10

*Board of the County Commissioners of Bryan County v. Brown*
    520 U.S. 397 (1996) .......................................................................12

11

12

*Brooks v. City of Seattle*
    599 F.3d 1018 (9th Cir. 2010) ..............................................................10

13

*Brousseau v. Haugen*
    543 U.S. 194 (2004) .........................................................................9

14

15

*Buchanan v. Cate*
    2011 WL 206658, 2 (S.D. Cal. 2011) .......................................................15

16

*Camarillo v. McCarthy*
    998 F.2d 638 (9th Cir.1993) ................................................................15

17

18

*Christie v. Iopa*
    176 F.3d 1231 (9th Cir. 1999) ..............................................................13

19

*City of Canton v. Harris*
    489 U.S. 378 (1988) ....................................................................12, 13

20

21

*City of Los Angeles v. Heller*
    475 U.S. 796 (1986) .......................................................................12

22

*Clouthier v. County of Contra Costa*
    591 F.3d 1232 (9th Cir. 2010) ..............................................................14

23

24

*Dawson v. City of Seattle*
    435 F.3d 1054 (9th Cir. 2006) ...............................................................8

25

*Florida v. Bostick*
    501 U.S. 429 (1991) ........................................................................8

26

27

*Georgia v. Randolph*
    547 U.S. 103 (2006) ........................................................................5

28

DEFENDANTS' REPLY TO OPPOSITION TO MOTION/MOTION FOR SUMMARY JUDGMENT

*Graham v. Connor*
(1989) 490 U.S. 386 .......................................................................................7, 10

*Hopkins v. Bonvicino*
573 F.3d 752 (9th Cir. 2009) ..............................................................................5

*Hunter v. Bryant*
502 U.S. 224 (1991) ........................................................................................9, 10

*Hydrick v. Hunter*
500 F.3d 978 (9th Cir. 2007) ..............................................................................9

*John B. v. Superior Court*
38 Cal.4th 1177 (2006) .......................................................................................14

*Maraziti v. First Interstate Bank of California*
953 F.2d 520 (9th Cir. 1992) ..............................................................................9

*Millender v. County of Los Angeles*
620 F.3d 1016 (9th Cir. 2010) ...........................................................................7

*Mincey v. Arizona*
437 U.S. 385 (1978) .............................................................................................4

*Muehler v. Mena*
544 U.S. 93 (2005) ...............................................................................................8

*O'Toole v. Superior Court*
140 Cal.App.4th 488 (2006) ..............................................................................13

*People v. Triplett*
144 Cal.App.3d 283 (1983) .................................................................................3

*Polk County v. Dodson*
454 U.S. 312 (1981) ...........................................................................................12

*Reynolds v. County of San Diego*
84 F.3d 1162 (9th Cir. 1996) ..............................................................................9

*Rodis v. City and County of San Francisco*
558 F.3d 964 (9th Cir. 2009) ...........................................................................10

*Rupf v. Yan*
85 Cal. App.4th 411 (2000) ...........................................................................6, 11

*Saucier v. Katz*
533 U.S. 194 (2001) .......................................................................................9, 11

*Scott v. Henrich*
39 F.3d 912 (9th Cir. 1992) ..............................................................................12

*Taylor v. List*
880 F.2d 1040 (9th Cir. 1989) ............................................................................9

DEFENDANTS' REPLY TO OPPOSITION TO MOTION/MOTION FOR SUMMARY JUDGMENT

*Terry v. Ohio*
    392 U.S. 1 (1968)............................................................................................3

*Tolosko-Parker v. County of Sonoma*
    2009 W.L. 49099, 5 (N.D. Cal. 2009) .................................................14

*Turnacliff v. Westley*
    546 F.3d 113 (9th Cir. 2008) ................................................................15

*U.S. v. Black*
    466 F.3d 1143 (9th Cir. 2006) ................................................................4

*U.S. v. Stafford*
    416 F.3d 1068 (9th Cir. 2005) ...........................................................2, 4

*Wong v. Tai Jing*
    __ Cal.Rptr.3d__, 2010 WL 4457330 (2010)......................................14

**Federal Statutes, Rules & Regulations**

Fed. Rules of Evid., rule 201 ....................................................................15

**Californa Statutes**

Civ. Code, § 52.1 ................................................................................... i, 14

Gov. Code, § 820.2 ....................................................................................15

Gov. Code, § 820.8 ....................................................................................15

Pen. Code, § 847(b) ...................................................................................13

Pen. Code, § 1524 ...........................................................................6, 10, 11

Pen. Code, § 1524(a)(10) ...........................................................................11

Welf. & Inst.Code, § 5150 .................................................................. passim

Welf. & Inst. Code, § 5278 ........................................................................14

Welf. & Inst., Code, § 8102 ............................................................... passim

DEFENDANTS' REPLY TO OPPOSITION TO MOTION/MOTION FOR SUMMARY JUDGMENT

# I. INTRODUCTION

Plaintiffs misconstrue the evidence, rely on immaterial maters and ignore their own testimony. They improperly ignore controlling legal standards,  limit analysis solely to isolated facts and ignore the totality of the circumstances.   Argument that facts unknown to the officers or discovered after the incident preclude summary judgment is meritless.  Whether Cole in fact was mentally disordered, owned a firearm or posed a threat only to his mother is irrelevant as these circumstances were unknown at the time.  Probable cause supported plaintiffs' detention and the searches of their residence, and qualified immunity precludes their § 1983 claims.  The state law claims also must fail because their detention and search of their home was reasonable and lawful, and defendants are immune from plaintiff's claims under state law.

# II. ARGUMENT

## A.   Plaintiffs' Section 1983 Claim Is Unsupportable

### 1.    The Officers' Entrance Into The Garage Was Lawful

Plaintiffs confuse Cole's detention with the reasonableness of the officers' entry into the garage. Cole was not detained when the officers first contacted him or entered the garage, and his subsequent detention has no bearing on the initial entry, which was lawful based upon Cole's consent or under the emergency doctrine.  Cole testified he requested the officers go to the garage, he opened the door to let them in, and  when they started to walk into the garage he stepped aside to let them come in.  He never told them they could not enter.  (Cole Depo. 64:1-2, 64:6-8, 64:18-21.)  The inferences plaintiffs seek to draw from the undisputed evidence are <u>unreasonable</u>.  They argue that the only reasonable thing to do, knowing Cole had access to weapons, was to bring him outside to control his movements and access to weapons. Cole, however, was not armed with any weapon when officers' contacted him, and there was no evidence weapons were immediately accessible or that he was a threat to the officers.  Their claim that when Cole entered the garage "police were already standing in the doorway of the garage" is wholly unsupported and contradicted by Cole's own testimony that he opened the door and stepped aside to let them in.  Argument that it should be inferred Cole did not consent to their entry because he "did not allow officers to enter his front door" is unsupportable, as the officers never sought to enter his front door, and Cole testified he asked the officers to come to the garage "Because I wanted to be able to talk with them

without disturbing other people in the house", not because there was any issue about entering the front door.  (Cole Depo. 58:25-59:4.)

Entry also was lawful under the **emergency doctrine**, which permits warrantless entry when officers "are responding to a perceived emergency….[because] the police also function as community caretakers."  (*U.S. v. Stafford*, 416 F.3d 1068, 1073 (9th Cir. 2005).)  It is undisputed that the officers were dispatched to Cole's residence <u>specifically to conduct a welfare check on him</u>, dispatch reported he exhibited unusual behavior and that he sounded 5150, Cole was heard loudly and heatedly saying "Things will be different tomorrow," and Cole's mother reported that he had threatened her, he was known to possess firearms and he was prescribed Xanax for anxiety.  Under the totality of the circumstances, the officers reasonably believed that Cole might be a danger to himself or others, particularly given his reported history of firearms possession, as he could use a firearm on himself or someone else such that "things would be different".  There is no evidence that entry into the garage was primarily motivated by intent to arrest or seize evidence.  The emergency exception thus further justified entry into the garage.[1]

Plaintiffs seek to ignore the evidence and the <u>totality</u> of the circumstances. They ignore that 911 operators spoke with Cole and reported that he sounded 5150 based on their interaction, Cole admitted he was angry and loudly and heatedly said, "Things will be different tomorrow", the officers knew that the Xanax he was prescribed was for anxiety and the officers were advised he had shotguns.  That plaintiffs dispute whether Cole in fact possessed firearms is wholly immaterial to the facts and circumstances known at the time.  Their argument that no emergency existed because it already was confirmed Nancy Cole was safe and she was the only one threatened and the occupants of the home were safe is unsupported.  The welfare check was for Cole's well-being, irrespective of Nancy's safety. Nancy was in another city, and she could not provide any information as to plaintiffs' condition or the safety of anyone in the home. That Cole may not have threatened or harmed anyone in the past, does not ensure anyone's safety on the particular occasion.

---

[1]   Plaintiffs cannot, and do not, dispute that Lt. Hern was not even on scene at the time Officers Rocheville and Cortese entered the garage, and there is no basis for liability against him for the garage entry.  Plaintiffs make vague arguments about his agreement to the officers' decisions, but they offer no evidence to support such claims and no basis to find Lt. Hern agreed to or participated in any decision when he was not even on scene.

DEFENDANTS' REPLY TO OPPOSITION TO MOTION/MOTION FOR SUMMARY JUDGMENT

2.    Probable Cause Supported Cole's Detention For Psychiatric Evaluation Under § 5150

Under § 5150, "an officer may detain any person the officer determines, 'as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled.'… if facts are **known to the officer** 'that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself.'… the officer must point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion.'…'Each case must be decided on the facts and circumstances presented to the officer at the time of the detention.'" (*Bias v. Moynihan,*, 508 F.3d 1212, 1220 99th Cir. 2007); *People v. Triplett,* 144 Cal.App.3d 283, 287-88 (1983).)   A peace officer is not required to make a medical diagnosis.  " **[G]enerally mental disorder might be exhibited if a person's thought processes as evidenced by words or actions or emotional affect, are bizarre or inappropriate for the circumstances**."   [Emphasis added.]   (*Triplett*, 144 Cal.App.3d at 288.)   *This Court in fact previously found that even based only on the allegations of plaintiffs' complaints, "the officers had probable cause to seize plaintiff." (See Order dated 02/09/2010, pp. 5-6.)*

In addition to the facts specified above, it is undisputed that: the location of firearms was unknown; Cole refused to provide any information or answer any questions and instead stared straight ahead and refused eye contact with the officers, occasionally responding with "I decline to answer" or "I decline to state."   The officers thought he appeared "catatonic" because he stared straight ahead at nothing and would not look at them.   Cole exhibited words, actions and affect that were inappropriate and bizarre under the circumstances.   The totality of the circumstances establishes probable cause to believe that Cole was mentally disordered, and possibly a danger to himself or others, and his §5150 detention was reasonable. The undisputed evidence now further confirms that Cole's detention was reasonable.

Plaintiffs' argument that defendants misconstrue the necessary elements for detention under § 5150 is plainly inaccurate, and they again ignore the totality of the circumstances supporting probable cause for Cole's detention.   Defendants set forth the necessary elements for a § 5150 detention taken verbatim from Ninth Circuit and California case authority, which plaintiffs wholly ignore.   Their argument regarding "a warrantless search" and reliance on *Mincey v. Arizona,* 437 U.S. 385 (1978) and *Terry v. Ohio*, 392 U.S. 1 (1968) is inapposite; neither case involved detention for a mental health

DEFENDANTS' REPLY TO OPPOSITION TO MOTION/MOTION FOR SUMMARY JUDGMENT

evaluation.  The argument that Cole's detention was unreasonable because he only was a potential threat to Nancy Cole who was 18 miles away again and that no one in the home was harmed ignores the evidence and the totality of the circumstances known at the time.  Their speculation that Cole was detained because he invoked his Fifth Amendment rights is wholly unsupported by any evidence, and his subjective belief has no bearing o the reasonableness issue. The totality of the undisputed evidence amply establishes probable cause to detain Cole under §5150.

        3.    <u>The First Search Of The Residence By Officers Rocheville And Cortese Was Reasonable</u>

        The Supreme Court has long recognized "the right of the police to respond to emergency situations. …'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." (*Mincey*, 437 U.S. at 392.)  Indeed, where the police have a reasonable belief that someone might be inside badly injured and in need of medical attention, "the police would be harshly criticized had they not investigated" and someone was in fact inside and in need of assistance. (*U.S. v. Black*, 466 F.3d 1143, 1145 (9th Cir. 2006).) "Erring on the side of caution is exactly what we expect of conscientious police officers.  This is a "welfare search" where rescue is the objective, rather than a search for crime.  We should not second-guess the officer's objectively reasonable decision in such a case. (*Id.*)  Similarly, under the "emergency aid" doctrine, police are authorized to "enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury."  (*Id.* at 1146, fn.1, *citing Bingham City, Utah v. Stuart*, 547 U.S. 398, 403(2006).) The emergency doctrine applies where  "(1) The police…have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property. (2) The search [is not] primarily motivated by intent to arrest and seize evidence. (3) There [is] some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." (*U.S. v. Stafford*, 416 F.3d 1068, 1073 (9th Cir. 2005).)

        Officers Rocheville and Cortese's entry into the residence was a lawful welfare check <u>or</u> under the emergency aid doctrine. Cole was behaving abnormally and appeared to be mentally disordered under 5150, he had made threatening statements to his mother, he had a firearm registered to him and was known to possess firearms, and he refused to provide any information about Oberg or her children and their well-being, thus the officers reasonably believed that they might be injured and in need of medical

DEFENDANTS' REPLY TO OPPOSITION TO MOTION/MOTION FOR SUMMARY JUDGMENT

attention, and confirming their safety was imperative. The officers would be harshly criticized had they not investigated and Oberg and her children in fact were inside in need of medical care. Ensuring their safety was the only objective of the entry, and there was no criminal investigation or other purpose.

Plaintiffs disregard applicable legal standards and rely on inapposite authority. In *U.S. v. Good*, 780 F.2d 773 (9th Cir. 1986), the officers' warrantless entry was justified because they reasonably believed someone was seriously injured and entry was necessary to assist the injured person. (*Id.* at 774-75.) The government also sufficiently showed a warrant could not have been obtained in time because "obtaining a telephonic warrant is not a simple procedure" and the delay in obtaining a telephonic warrant would unduly increase the risk to the stabbing victim believed to be in the residence. (*Id.* at 775.) The officers in this case reasonably believed that Oberg or her children might be seriously injured and in need of immediate assistance, particularly because of Cole's mental condition, his history of firearms possession and his unwillingness to provide information about Oberg and her children. If anyone in the home had been shot, the delay in obtaining a telephonic warrant would unduly increase the risk of blood loss and death. *Hopkins v. Bonvicino*, 573 F.3d 752 (9th Cir. 2009) is factually dissimilar and distinguishable. Officers there were investigating a hit and run accident they knew was not serious and there was no basis to believe that anyone was seriously injured and in need of immediate assistance. The car involved was not even scratched and the driver drove away. In *Georgia v. Randolph,* 547 U.S. 103 (2006), a criminal defendant's wife's consent could not override the husband's refusal and seized contraband could not be used against him. No welfare check or emergency situation was involved.

Plaintiffs' argument that the search was unjustified because "no weapon was in jeopardy of destruction" is irrelevant; destruction of weapons was not an issue and was not asserted as a basis for entry. Claims that a welfare check was unnecessary because Cole did not have a firearm and Oberg was safe are meritless and unsupported by the evidence. The applicable standard evaluates what the officers knew at the time, not what subsequently was determined with hindsight. The only information known to the officers was that Cole possessed firearms in the past and was known to have firearms, and Cole admits he refused to answer any question about firearms. (Cole Depo., 70:10-17.) The evidence sufficiently establishes that the officers reasonably believed Oberg or her children might be seriously injured and in need of immediate assistance, particularly given the information about Cole's firearms possession.

DEFENDANTS' REPLY TO OPPOSITION TO MOTION/MOTION FOR SUMMARY JUDGMENT

4.     Officer Cortese's Search For Weapons Was Lawful Under Welf. & Inst. Code § 8102

California Welf. & Inst. Code  § 8102 specifically requires that whenever a person who has been detained for a mental health evaluation owns, possesses or controls "**any firearm whatsoever**…the firearm or other deadly weapon **shall be confiscated by any law enforcement agency or peace officer, who shall retain custody of the firearm or other deadly weapon.**" [Emphasis added.] Urgent passage of § 8102 was deemed necessary because "It is essential that a constitutionally sound mechanism authorizing a procedure for the confiscation of firearms or other deadly weapons in the hands of persons taken into custody for evaluation of their mental condition, always be available to law enforcement agencies." (Section 3 of Stats. 1989, c. 921.)  Section 8102 contained no requirement that officers obtain a search warrant before searching for weapons to be confiscated, and the lack of any such requirement appears intentional, particularly given the Legislature's express concern that officers immediately have a "constitutionally sound mechanism authorizing a procedure to seize firearms or other deadly weapons" from 5150 detainees. "Keeping a firearm away from a mentally unstable person is a reasonable exercise of the police power.  It is not unreasonable to conclude there is a significant risk that a mentally unstable gun owner will harm himself or others with the weapon." (*Rupf v. Yan*, 85 Cal.App.4[th] 411, 423 (2000).) Section 8102 expressly required officers to confiscate firearms and deadly weapons owned, possessed or in control of the detainee, without limitation to weapons in the immediate vicinity or immediately accessible to the detainee, demonstrates intent to authorize a search and seizure without a warrant to accomplish the immediate removal of weapons.  Similarly, Penal Code §1524 in effect at the time of Cole's detention contained no requirement or provision for a search warrant related to confiscating weapons under §8102.  Section 1524 concerned only searches related to criminal investigations, and only was amended in 2010 to include issuance of a search warrant for the seizure of firearms under § 8102. The statutory scheme of §8102 and §1524 at the time of Cole's detention thus did not require a warrant

Cole was detained for mental health examination, and under the express language of § 8102, the officers were required to confiscate any firearms or deadly weapon in his possession or control. Officer Cortese's search of the residence for firearms thus was reasonable and necessary for the officers to fulfill their statutory duty. The search also was brief, lasting only 5 minutes and limited in scope to places a handgun might be kept.  No firearms were located and nothing was seized as a result of the brief search.

1    The search also was proper under the community caretaking exception.[2]   The officers had no

2    control over the length of time Cole would be evaluated at the hospital and prompt entry into the house to

3    search for weapons was necessary to protect the occupants and others because Cole may have been

4    quickly released and returned to the residence, only to harm Oberg, her children or someone else, with

5    any firearm he might possess.  The warrantless entry thus was objectively reasonable.

6    Plaintiffs' assertion that defendants were required to obtain a warrant "when they established no

7    one capable of using a gun was still in the house" is unsupported, and their citation to *Millender v. County*

8    *of Los Angeles*, 620 F.3d 1016 (9th Cir. 2010) is unavailing.  In *Millender*, a search warrant was obtained

9    and the issue there was the validity of the warrant, which appeared to exceed the scope of the underlying

10   criminal violation.  *Millender* did not involve §§ 5150 or 8102, and fails to support the argument for

11   which it is cited.  Plaintiffs' arguments regarding the exclusionary rule for evidence in criminal cases and

12   exceptions to the exclusionary rule are irrelevant and unavailing.

13   Defendants do not claim that their search under § 8102 was the result of a mistake of law as

14   plaintiffs assert, and argument in this regard is irrelevant.  Their argument that the search was unjustified

15   because there was no weapon registered to the home and that a state statute cannot overrule a

16   constitutional amendment misapprehends the law.  Section 8102 does not limit confiscation of firearms to

17   weapons registered to the home, and whether a weapon was in fact registered is irrelevant to the

18   reasonableness analysis.  Further, § 8102 does not "overrule" the Fourth Amendment as plaintiffs assert,

19   but rather is a limited exception to the warrant requirement.  The search was authorized by  § 8102.

20   5.   The Minimal Force Used To  Effectuate Cole's Detention Was Reasonable

21   To determine whether an officer's use of force was reasonable under the Fourth Amendment, the

22   court must consider the totality of the circumstances. (*Graham v. Connor*, 490 U.S. 386, 396 (1989).)

23   "**Not every push or shove, even if it may later seem unnecessary in the peace of a judge's**

24   **chambers…violates the Fourth Amendment**."  [Emphasis added.]  (*Id*. at 396-397.)  Cole testified that

25   the only force used consisted of handcuffing in which he felt "some force" on his back, and Officer

26   Rocheville pushing him so that he was leaning at an angle on the car and kicking his feet apart to pat him

27

28   [2]    It is undisputed that Officer Rocheville did not participate in the second search and cannot be liable for any
       civil rights violation based upon the second search.

DEFENDANTS' REPLY TO OPPOSITION TO MOTION/MOTION FOR SUMMARY JUDGMENT

1  down. "It didn't feel good" but he was uninjured.  The force used on Cole was so minimal, necessary and

2  objectively reasonable to place him in handcuffs and pat him down before a hospital intake, and did not

3  violate his rights.  Plaintiffs do not oppose summary judgment in this regard, essentially conceding

4  judgment for defendants should be granted on this issue.

5         6.   <u>Oberg Was Not Detained In Violation Of The Fourth Amendment</u>

6        Based upon Oberg's testimony, it is undisputed that the officers simply asked Oberg to speak with

7  them about Cole, Oberg briefly and voluntarily spoke to the officers in the kitchen, she voluntarily went

8  into the garage because she saw Cole sitting there, the officers briefly spoke to her about possible firearms

9  on the premises, she was allowed to walk about the garage, stand near Cole and freely talk to him.  A

10  seizure is not automatically found each time a police officer approaches an individual and asks questions.

11  (*Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Muehler v. Mena*, 544 U.S. 93, 98 (2005).) Oberg was not

12  detained or arrested, and she was not seized during the encounter.

13        Moreover, even if the officers' minimal contacts with Oberg constituted a seizure, it was reasonable

14  under the totality of the circumstances. "**An officer's authority to detain incident to a search is**

15  **categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the**

16  **intrusion to be imposed by the seizure**…"  (*Id*. at 98.) Where an officer was authorized to search, a

17  detention that was coextensie with the period of the search requires no further justification.  (*Dawson v.*

18  *City of Seattle,* 435 F.3d 1054, 1066 (9th Cir. 2006).)  This doctrine **applies to all searches upon**

19  **probable cause, not just to searches for contraband.**  (*Id*)  Indeed, even apart from an officer's

20  categorical authority to detain a building's occupants during a search, the law enforcement interests in

21  safely and effectively conducting residential searches amply justify detention.  (*Id.*)

22        Plaintiffs incorrectly argue that *Mena, supra,* and *Dawson, supra,* are inapposite because the

23  officers' there had a search warrant, as these decisions were not limited to instances where a search

24  warrant exists.  Rather, where the search is authorized and lawful, a detention during the search is

25  reasonable.  Plaintiffs' argument that "there was no sign of struggle, the view from the front window did

26  not show any dangerous or abnormal conditions", Nancy reported only that Cole was a threat to her and

27  Nancy was determined to be safe has no bearing on any issue in this case and plaintiffs fail to show how

28  these factors have any bearing on Oberg's detention.  The totality of the circumstances justified the search

DEFENDANTS' REPLY TO OPPOSITION TO MOTION/MOTION FOR SUMMARY JUDGMENT

1    of plaintiffs' residence, and Oberg's brief detention during the search did not violate her rights.

2        7.    Defendants Are Not Vicariously Liable Under § 1983 And Chief Johnson And Capt.
             Fitzgerald Are Not Individually Liable

3        A supervisor is liable for the constitutional violations of subordinates only "'if the supervisor

4    participated in or directed the violations, or knew of the violations and failed to act to prevent them.'

5    *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)." (*Hydrick v. Hunter* 500 F.3d 978, 988 (9th Cir.

6    2007).) It is undisputed that Lt. Hern was not present at the scene until after Cole already was detained.

7    Plaintiffs' claim that Lt. Hern "concurred in the decision to seize Cole" is wholly unsupported.  Lt. Hern

8    did not participate in or direct any constitutional violation, and there is no evidence that he knew of any

9    such violation and failed to prevent it.  Plaintiffs' detentions and the searches also were reasonable, and

10   the force used against Cole was reasonable, thus there is no basis for liability against Lt. Hern, including

11   supervisory liability, under §1983.

12       It is undisputed that Chief Johnson and Capt. Fitzgerald did not participate in any part of the

13   detention or search.  Plaintiffs do not dispute that the claims against them in their individual capacities are

14   unsupportable, and judgment should be granted in their favor.

15   **B.    The Officers Are Entitled To Qualified Immunity From Plaintiffs' Federal Claims**

16       Qualified immunity applies where a reasonable officer could have believed the conduct was

17   justified, **notwithstanding that reasonable officers could disagree on that issue.** (*Reynolds v. County of*

18   *San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996).[3]   **A court discerns whether "the [officer] acted**

19   **reasonably under settled law in the circumstances, not whether another reasonable, or more**

20   **reasonable interpretation of the events can be constructed…after the fact."** (*Hunter v. Bryant,* 502

21   U.S. 224, 228 (1991).) The relevant, dispositive inquiry in determining whether a right is clearly

22   established is whether it would be clear to a reasonable officer that his conduct was unlawful in the

23   situation he confronted." (*Saucier v. Katz,* 533 U.S. 194, 202 (2001); *Brousseau v. Haugen,* 543 U.S. 194,

24   205 (2004).)  It is plaintiff's burden to prove that the law governing the officers' conduct was "clearly

25   established." (*Maraziti v. First Interstate Bank of Cal.,* 953 F.2d 520, 523 (9th Cir. 1992).) **It is not**

26   **enough to "determine the broad question of whether the seizure of [the detainee] violated the fourth**

27   _____

28   [3]      Overruled in part on other unrelated grounds, *Acri v. Varian Assoc.,* 114 F.3d 999 (9th Cir. 1997).

1  **amendment's proscription against unreasonable seizures…To do so would merely state [the**

2  **detainee's] right in the abstract, rather than his rights under the particular circumstances of [the]**

3  **case as the Supreme Court has mandated**." (*Maag,* 960 F.2d at 775.) Moreover, "The Supreme Court

4  has 'recognized that it is inevitable that law enforcement officials will in some cases reasonably but

5  mistakenly conclude that probable cause is present.' . . . In such cases those officials should not be held

6  personally liable." (*Rodis v. City and County of San Francisco*, 558 F.3d 964, 970-71 (9th Cir. 2009),

7  *citing Hunter, supra, and Anderson v. Creighton,* 483 U.S. 635, 641 (1987).)

8  The totality of circumstances established probable cause for Cole's detention, and even if

9  reasonable officers might disagree, or Officer Rocheville was mistaken that Cole was mentally disordered

10  and a danger to himself or others, his belief was reasonable and he is entitled to qualified immunity.

11  Plaintiffs do not dispute that qualified immunity precludes their § 1983 unlawful detention claim.

12  It is well established that the right to make even an investigatory stop necessarily carries with it

13  the right to use some degree of physical coercion to effect it. (*Graham,* 490 U.S. at 396; *Brooks v. City of*

14  *Seattle,* 599 F.3d 1018, 1025 (9th Cir. 2010).) Plaintiffs do not dispute that the de minimis force used to

15  handcuff Cole and pat him down was objectively reasonable, and they do not dispute that Officer

16  Rocheville is qualifiedly immune from Cole's excessive force claim.

17  The officers also are entitled to immunity from the unlawful search claims. Cole was exhibiting

18  bizarre behavior, the officers knew firsthand and from dispatch reports that he made threatening remarks,

19  he was known to have firearms and other people resided at the home. The search of the premises to ensure

20  the occupants' safety was reasonable, and qualified immunity applies. Plaintiffs also do not dispute this.

21  Oberg's brief detention while the officers asked her about Cole and his firearms possession and

22  during the 5 minute search for firearms was lawful and did not violate her rights. Plaintiffs cannot show

23  that the law was clearly established prohibiting her detention under the circumstances.

24  Qualified immunity also applies to the second search for weapons. Cole was detained under §

25  5150, and under § 8102's mandate that firearms or any deadly weapon "**shall be confiscated by any law**

26  **enforcement agency or peace officer, who shall retain custody of the firearm or other deadly**

27  **weapon**", the officers were *required* to confiscate firearms in Cole's possession. Under Penal Code §

28  1524 in effect at the time, confiscation of weapons under § 8102 was not mentioned, and there was

nothing in § 8102 or § 1524 indicating any need to obtain a search warrant before searching for and confiscating firearms possessed by detainees.[4]  Indeed, § 8102 required officers to confiscate firearms in a 5150 detainee's possession since at least the 2002 version of the statute, and never required a warrant to fulfill its mandatory requirement. *Rupf, supra,* in 2000, also emphasized the unique nature of § 8102 and the Legislative intent in enacting § 8102 as a means of authorizing police to promptly confiscate weapons owned by mentally unstable persons, even when the weapons were not immediately accessible, based upon the urgency and severity of harm that could potentially result from a mentally unstable person having access to weapons. *Rupf* did not even hint that a warrant was necessary under § 8102.

Penal Code § 1524 only was amended <u>long after the incident in November 2007</u> to *now* provide that a search warrant may be issued for weapons owned or possessed by a 5150 detainee as described in § 8102.  (Penal Code § 1524(a)(10).)  The law thus was <u>not</u> clearly established in November 2007 that officers were required to obtain a search warrant to fulfill the express statutory mandate to confiscate weapons possessed or controlled by 5150 detainees.  Reasonable officers in the same situation would have believed that a warrantless search of the residence to locate and confiscate firearms was lawful under § 8102 and the undisputed circumstances.  Plaintiffs cannot meet their burden to show that the law was clearly established prohibiting such search.  That the Fourth Amendment generally proscribes unlawful seizures plainly is insufficient to defeat qualified immunity. (*See Saucier, supra.*)

Plaintiffs' opposition ignores and misstates the law regarding qualified immunity.  They assert that defendants made a mistake of law and misrepresent that said mistake "has already been determined to be unreasonable by the California Appellate Court."  They cite no authority for this assertion, and in fact, the single case finding a warrantless search under § 8102 unreasonable was decided <u>*after*</u> the subject incident and <u>was depublished by the California Supreme Court</u>.  Plaintiffs also misunderstand their burden to show clearly established law to defeat summary judgment, arguing that the general Fourth Amendment prohibition against unlawful searches and seizures constitutes clearly established law.  This argument is clearly contrary to Supreme Court and Ninth Circuit authority. (*Saucier,* 533 U.S. at 205; *Maag*, 960 F.2d at 775.)  Plaintiffs fail to meet their burden to show clearly established law prohibiting the officers' conduct under the <u>particular</u> circumstances of this case.

---

[4]  See Penal Code § 1524, 2007 version, (effective 01/01/07 – 12/31/09) attached to Request For Judicial Notice.

1    Plaintiffs' claims that Oberg said no guns were present, that no guns were registered to the

2    residence and that the only information was that Cole had shot guns in the past – which is a misstatement

3    of the facts known to the officers, are insufficient to defeat qualified immunity.  Their request for further

4    briefing on the issue of qualified immunity also is unwarranted as they had ample opportunity to brief the

5    issue in their own motion for summary judgment and in response to the instant motion.

6    **C.**    **The Undisputed Evidence Establishes That Plaintiffs' Monell Claims Are Unsupportable**

7    Plaintiffs' claim that summary judgment on this issue is precluded because the *Monell* claims were

8    bifurcated and related discovery "has not yet commenced" is unfounded.  Plaintiffs were provided all of

9    the officers' training records and the City's policies regarding 1) mental health services and evaluations,

10   2) professional conduct and responsibility and 3) complaints from members of the public and personnel

11   investigations on September 10, 2009 in response to their request for production, all reports related to §

12   5150 for an 18 month period were produced on April 22, 2010, and confidential IA records for each

13   officer were provided to plaintiffs on March 3, 2011.  Plaintiffs' counsel also questioned each officer

14   about their training and/or department policies regarding § 5150 and searching for weapons.  Plaintiffs

15   thus have conducted ample discovery to support their *Monell* claims.

16   They inexplicably argue  defendants mischaracterize their claims as respondeat superior claims

17   and fail to recognize that their claims are for inadequate training, ratification and unlawful policy and

18   practice.  Defendants' moving papers substantially discuss all three theories of *Monell* liability, and that

19   the undisputed evidence fails to establish liability under any theory. "[A] municipality can be liable under

20   § 1983 only where its policies are the moving force behind the constitutional violation."  (*City of Canton*

21   *v. Harris*, 489 U.S. 378, 389 (1988); *Polk County v. Dodson*, 454 U.S. 312, 326 (1981).)  "[A] plaintiff

22   must show that the municipal action was taken with the requisite degree of culpability and **must**

23   **demonstrate a direct causal link between the municipal action and the deprivation of federal**

24   **rights**."  [Emphasis added.]  (*Board of the County Comms'rs. of Bryan County v. Brown*, 520 U.S. 397,

25   404 (1996).)  "While the liability of municipalities doesn't turn on the liability of individual officers, it is

26   contingent on a violation of constitutional rights."  (*Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1992);

27   *cert. denied*, 515 U.S. 1159, 115 S.Ct. 2612 (1995);  *City of Los Angeles v. Heller,* 475 U.S. 796, 799

28   (1986.)  Plaintiffs in the instant case cannot show *both* a violation of constitutional rights *and* that the

violation was the result of an official policy, pattern or practice of the City. Cole's detention was supported by ample probable cause, the entry into plaintiffs' residence for a welfare check of the occupants was objectively reasonable, Oberg's detention was reasonable, the search for weapons was reasonable and no excessive force was used, thus plaintiffs' constitutional rights were not violated. Plaintiffs have no evidence at all to show any unconstitutional official policy pattern or practice, and no evidence to show a direct causal link between official action and deprivation of any federal rights.  They also cannot establish ratification, which requires that "a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it." (*Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999); *Clouthier, supra,* 591 F.3d at 1250.  It "<u>is well settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval…</u> [as this] would simply smuggle *respondeat superior* liability into section 1983." [Emphasis added.] (*Christie*, 176 F.3d at 1239-1240.)  There is no evidence that Chief Johnson or any City official approved the officers' actions and the bases for them <u>beforehand</u>, or a "conscious affirmative choice" to follow a particular course of action when faced with various alternatives. The undisputed evidence also fails to show inadeaute training, which requires showing "deliverate indifference" to a constitutional right. This standard is met when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." (*Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010); *City of Canton, supra,* 489 U.S. at 389-390.)   The undisputed evidence fails to show "deliberate indifference" to sustain a failure to train claim. Plaintiffs were provided substantial discovery related to their municipal liability claims, and the evidence fails to support municipal liability under any theory.

**D.     Plaintiffs' State Law False Imprisonment Claim Is Unsupportable**

The undisputed evidence shows plaintiffs were lawfully detained, thus their false imprisonment claims are meritless. (*O'Toole v. Superior Court*, 140 Cal.App.4th 488, 511-512 (2006); Penal Code § 847(b).)  Their arguments regarding excessive force are irrelevant to the false imprisonment claim.

**E.     The Intentional Infliction Of Emotional Distress And Trespass Claims Are Unsupportable**

The officers' conduct was at all times lawful, and there is no evidence whatsoever showing outrageous conduct by any of the officers, or that they intended to cause plaintiffs emotional distress or

1  recklessly disregarded the probability emotional distress would result. (*Aquino v. Superior Court,* 21 Cal.

2  App. 4th 847, 856 (1993); *Wong v. Tai Jing,* __ Cal.Rptr.3d__, 2010 WL 4457330 (2010).) Entry onto the

3  property and search of the residence also was objectively reasonable under the totality of the

4  circumstances and lawful. Plaintiffs present no evidence at all to support their claims, misstate that

5  defendants merely conclude the elements are not met and they ignore the ample evidence.

6  **F.  Plaintiffs' Claim For Violation Of Civil Code § 52.1 Is Unsupportable**

7  Plaintiffs ignore the requirements for a claim under § 52.1 and essentially concede their claim is

8  meritless. Section 52.1 requires a showing that "defendants interfered with plaintiff's constitutional rights

9  by threatening or committing violent acts" (*Tolosko-Parker v. County of Sonoma,* 2009 W.L. 49099, 5

10  (N.D. Cal. 2009).) The undisputed evidence in this case establishes that plaintiffs' rights were not

11  violated, and there is no evidence at all that any of the officers used threats, coercion, intimidation or

12  violence against plaintiffs. Their § 52.1 claim is unsupportable.

13  **G.  The Evidence Fails To Support A Civil Conspiracy Or Aiding And Abetting Claim**

14  Civil conspiracy requires formation and operation of the conspiracy and damages resulting from

15  acts in furtherance of the common plan. (*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503,

16  511 (1994).) It is not a cause of action, but imposes liability on persons who share a common plan or

17  design with the actual perpetrator. (*Id.* at 510-11) Plaintiffs here have no evidence that a conspiracy

18  existed or that they were injured by any conspiracy. There is no evidence to support an aiding and

19  abetting claim.

20  **H.  The Undisputed Evidence Fails To Support Plaintiffs' Negligence Claim**

21  Plaintiffs cannot demonstrate that the defendants owed them a duty that was breached, and which

22  proximately caused them injury. (*John B. v. Superior Court,* 38 Cal.4th 1177, 1188 (2006.) Defendants

23  had no duty to plaintiffs to use different tactics than they did, and the negligence claim is meritless.

24  **I.  Defendants Are Immune From Liability For Plaintiffs' State Law Torts**

25  Cole's detention was supported by ample probable cause, and the officers are immune from

26  liability under Welf. & Inst. Code § 5278 and Govt. Code § 856. Their claim that § 5278 immunity was

27  waived because it was not in the Answer is meritless. The 32nd affirmative defense pleads immunity

28  under all provisions of the Tort Claims Act, state and federal statutes and regulations, which encompasses

---

14

immunity under § 5278. Plaintiffs fail to show any prejudice, thus an affirmative defense may be raised for the first time on summary judgment. (*Camarillo v. McCarthy,* 998 F.2d 638, 639 (9th Cir.1993).)

The officers' decision to detain plaintiffs and to search the premises necessarily involved personal deliberation, decision and judgment, and their exercise of discretion is subject to immunity under § 820.2. (*Ortega,*161 Cal.App.4[th] at 733.) The City also is immune under Govt. Code §815.2.  Plaintiffs do not dispute that Chief Johnson and Capt. Fitzgerald are immune under Govt. Code 820.8.

**J.      Objections To Plaintiffs' Evidence**

Defendants object to plaintiffs' purported evidence consisting of unsupported conclusions and misstatements of the evidence, and irrelevant matter.  Judicial notice of pages from the DSM IV manual is inappropriate because it is irrelevant to any issue, and plaintiffs fail to supply necessary information, providing an incomplete portion of the DSM regarding catatonic features.  (Buchanan v. Cate, 2011 WL 206658, 2 (S.D. Cal. 2011); *Turnacliff v. Westley,* 546 F.3d 113, 1120 n.4 (9th Cir. 2008); FRE Rule 201.)

**III. CONCLUSION**

For the reasons set forth above and in defendants' moving papers, defendants respectfully submit that they are entitled to summary judgment on all claims, or in the alternative, partial summary judgment.


Dated:  June 3, 2011

BERTRAND, FOX & ELLIOT


By:_____/s/_____
     Gregory M. Fox
     Attorneys for Defendants
     CITY OF SUNNYVALE, CHIEF DON JOHNSON,
     CAPT. KELLY FITZGERALD, OFFICER STEVEN ROCHEVILLE,
     LIEUTENANT TRACY HERN and OFFICER SCOTT CORTESE

DEFENDANTS' REPLY TO OPPOSITION TO MOTION/MOTION FOR SUMMARY JUDGMENT