*E-filed on 9/14/2011*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RUSSELL COLE and STEPHANIE OBERG, | No. C-08-05017 RMW |
| Plaintiffs, | |
| v. | ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| CITY OF SUNNYVALE, CHIEF DON JOHNSON, CAPT. KELLY FITZGERALD, OFFICER STEVEN ROCHEVILLE, LIEUTENANT TRACY HERN and OFFICER SCOTT CORTESE, | [Re Docket Nos. 111, 119] |
| Defendants. | |

Plaintiffs Russell Cole and Stephanie Oberg bring this action pursuant to 42 U.S.C. § 1983 for alleged violations of their Fourth Amendment and related rights by defendants City of Sunnyvale, Chief Don Johnson, Captain Kelly Fitzgerald, Officer Steven Rocheville, Lieutenant Tracy Hern and Officer Scott Cortese. Presently before the court are defendants' motion for summary judgment and plaintiffs' cross-motion for partial summary judgment. For the reasons set forth below, the court grants defendants' motion except as to the plaintiffs' claim that Officer Cortese's search for firearms was a Fourth Amendment violation. Defendants' motion as to that claim is denied. Plaintiffs' counter-motion for partial summary judgment that the search for firearms constituted a violation of their rights under 28 U.S.C. § 1983 is granted. Plaintiffs' motion is otherwise denied.

ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-08-05017 RMW
HH

# I. BACKGROUND

On November 5, 2007 at approximately 11:00 pm, plaintiff Russell Cole telephoned from the residence of his girlfriend, Stephanie Oberg, in Sunnyvale, to his mother, Nancy Cole, at her home in Los Gatos, to express his anger over a disagreement that he had with her. When he was unable to reach her, Cole telephoned the Sunnyvale Police Dispatch and reported that his mother in Los Gatos needed help but he hung up without providing specific information. Sunnyvale Dispatch called Cole back, and he repeated that his mother in Los Gatos needed help, but he refused to be transferred to Los Gatos Dispatch and he hung up again. Dispatch noted in the CAD system, which provides written information to police officers, that Cole reported his mother in Los Gatos was not answering her phone and that he disconnected twice. Dispatch also noted that Cole "sounds 5150." Thereafter, Dispatch advised that the Santa Cruz County Sheriff's Department had contacted Nancy Cole at her residence and she was safe but that her son was possibly "5150." Officers Rocheville and Cortese were assigned to do a welfare check at Oberg's residence where Cole and Oberg resided.

Officer Rocheville arrived around midnight, parked his vehicle away from the Cole/Oberg residence and walked toward the house, stopping in the driveway to listen. Officer Rocheville heard Cole yelling on the telephone, "things will be different tomorrow." Within minutes, Nancy Cole contacted Dispatch to report that Cole was not stable and that he was threatening her. Cole's mother related that Cole repeatedly telephoned late at night and she initially did not answer. When she finally answered, Cole told her that he was coming to the house and "it will be over. Don't mess with me." Nancy Cole was frightened and asked the police to respond to the Cole/Oberg residence and talk with her son. Dispatch asked Nancy Cole if her son had any weapons and she responded, "I don't know. He shoots guns and stuff." When asked if Cole mentioned any weapons, his mother responded, "no. I don't know that he would have them in his person now, but he is accustomed to having a firearm." She also reported that Cole took Xanax for anxiety and lived with his girlfriend and her two children. Nancy Cole described her son as a threat to her but that his relationship with his girlfriend and the two children was stable.

Dispatch related to the officers that Nancy Cole repeated that her son threatened her over the phone and threatened to go to her house in Los Gatos. Dispatch advised that Cole was associated

ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-08-05017 RMW
HH                                       2

with guns in the past, but that his mother did not know if Cole currently owned any. Dispatch also mistakenly relayed that Cole had a shotgun, rather than he "shot guns." Dispatch also informed the officers that Cole resided with Oberg and her two children and that he took Xanax. Officer Rocheville asked Dispatch to run a registration check on Cole, and Dispatch responded that a gun was registered to Cole, but at a different address approximately 100 miles away.

Officers Rocheville and Cortese who were in full uniform approached the residence and contacted Cole at an open window near the doorway and asked to speak with him. Cole asked the officers to go to the front garage door so they would not disturb the other people in the house. Cole opened the garage door one-and-a-half to three feet and the officers entered the garage. Cole made no objection to their entry and stepped aside when they entered. Cole was asked to sit in a chair and he complied. Officer Rocheville was concerned that the statement "after tomorrow this will all be over" that he had heard when in the driveway was a threat, and he questioned Cole about his mother and their telephone conversation. Cole gave basic information, confirmed he had been on the phone, and then stopped responding. He did not make eye contact with the officers, refused to answer any questions and stared straight ahead. He would not confirm that his girlfriend Stephanie Oberg and her two children were in the house and were all right. As a result of the information Officer Rocheville had been told and his observations of Cole's behavior, Officer Rocheville decided to detain Cole under Cal. W & I Code § 5150. That statute authorizes a peace officer to take a person into custody for evaluation and treatment if the officer has probable cause to believe that the individual is a danger to himself or others as a result of a mental disorder. Officer Rocheville handcuffed Cole and left the garage and called Nancy Cole. She said she was not certain what Cole would do if he went to her home, but she feared for her safety if he did come to her home.

Lt. Hern arrived on the scene after Cole was detained and asked Cole about his statement that "things will be different tomorrow." Cole responded "I decline to answer" and asked the officers to write down their names and badge numbers. Lt. Hern found this behavior abnormal based upon his years of experience in contacting subjects. Lt. Hern wrote the information Cole requested on the back of his business card and placed it on a utility bench in the garage. Lt. Hern continued to ask questions and Cole repeatedly responded, "I decline to answer" or "I decline to state." According to

ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-08-05017 RMW
HH                                                                                              3

Cole, Lt. Hern stated "Now you've pissed me off" and took his business card back and later gave it to Oberg.

Officer Rocheville understood from Dispatch that Oberg, Cole's girlfriend, and her two children lived in the house. Officer Rocheville asked whether they were home and about their welfare. Cole refused to respond to any questions. The officers decided to conduct a welfare check of the residence to confirm the occupants were safe. Cole objected to the entry and then said that Oberg and the two children were sleeping and he did not want to wake them. Cole provided a telephone number to call Oberg instead. The officers, however, could not confirm that the number provided was in fact Oberg's or that a telephone call could confirm the safety of Oberg and her children. Officers Rocheville and Cortese entered the residence with flashlights and looked into the rooms. Officer Cortese looked into a bedroom and saw the children sleeping and nothing appeared disturbed. Officer Rocheville was standing in the corner of Oberg's bedroom when she awoke. He told her to come downstairs to discuss Cole. Oberg put on a robe and went downstairs. Officer Rocheville said there was a problem involving Cole threatening his mother. Oberg went into the garage and approached Cole and they spoke quietly. Officer Rocheville exited the garage and called Cole's mother about Cole's firearm possession. She reported that she searched her house but could not find Cole's firearm. Lt. Hern advised Oberg that Cole had a handgun registered to him and that they had information that Cole had a shotgun.

When Lt. Hern asked Oberg if there were any firearms in the house, Oberg responded that she was unaware of any firearms and did not believe there were any at the house. Cole responded "I decline to state" when asked about the firearms. Lt. Hern decided that Officer Cortese would conduct a search for firearms. Cole was in the custody of the officers at the time. The parties dispute how long Officer Cortese searched the residence—the defendants say approximately five minutes but plaintiffs claim it took longer. Officer Cortese searched the residence but did not locate any firearms. The officers then transported Cole to Valley Medical Center for observation and possible treatment. Oberg remained at the residence when the officers left. Cole was released from the Medical Center several hours later and was apparently determined not to be a danger to himself or others. The officers were at the plaintiffs' residence for less than an hour.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* A party moving for summary judgment who does not have the ultimate burden of persuasion at trial has the initial burden of producing evidence negating an essential element of the non-moving party's claims or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A court may grant a motion for summary judgment in part and narrow the issues remaining for trial. *See* Fed. R. Civ. P. 56(d).

### B. Violation of Fourth Amendment Rights Under 42 U.S.C. § 1983

Plaintiffs claim that the defendants Chief Don Johnson, Capt. Kelly Fitzgerald, Officer Steve Rocheville, Lieutenant Tracy Hern and Officer Scott Cortese violated their Fourth Amendment rights against unreasonable searches and seizures under 42 U.S.C. § 1983.[1] The Fourth Amendment, with exceptions discussed below, prohibits law enforcement officers from entering and searching a residence without first obtaining a warrant. *United States v. Cervantes*, 219 F.3d 882, 887 (9th Cir. 2000).

To maintain a prima facie case under § 1983, the plaintiff must establish that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct violated a right secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). The first requirement is known as the state action requirement, where the

---

[1] Plaintiffs' Third Amended Complaint only alleges a § 1983 claim against the individual officers based upon an alleged excessive use of force in violation of the Fourth Amendment and an alleged violation of their rights of free expression and association under the First Amendment. Third Amended Complaint ¶ 85. However, it appears clear that the parties have treated the complaint as alleging illegal searches in violation of the Fourth Amendment. The First Amendment claims were dismissed by the court's order of February 9, 2010.

plaintiff must prove that conduct was "fairly attributable to the state." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936 (1982). The officers in performing their duties here were working for the City of Sunnyvale and their conduct was undertaken and carried out under color of law. *See id.* at 936.

The second requirement for liability under § 1983 is met if the officers by any of their acts deprived plaintiffs of privileges or immunities secured to them under the Constitution. The acts about which plaintiffs complain are discussed in the chronological order in which they occurred.

### 1. The Officers' Entrance into the Garage Was Not a Fourth Amendment Violation

The plaintiffs claim that their Fourth Amendment rights were violated by the officers' entry into the garage of the residence without a warrant. Considering the totality of the circumstances, however, the entry was lawful. Initially, Cole impliedly consented to the entry. Cole requested the officers meet him at the garage and opened the garage door. Once the police officers entered the garage, Cole did not resist or protest their entrance. In fact, he stepped back to let them in.

But even without consent, the officers' entrance into the garage was lawful under the emergency doctrine. *See United States v. Stafford*, 416 F.3d 1068, 1074 (9th Cir. 2005). Three requirements must be satisfied in order to justify a warrantless search under the emergency doctrine: (1) the police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property; (2) the search must not be primarily motivated by an intent to arrest and seize evidence; and (3) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area to be searched. *Id.* A court determines whether or not the emergency exception applies in any given situation based on the totality of the circumstances, and, as with other exceptions to the warrant requirement, the government bears the burden of demonstrating that the search at issue meets these parameters. *Id.*

In this case, the requirements of the emergency doctrine are met. The circumstances known to the officers suggested a fair probability or a substantial chance that there was an emergency at hand and their immediate assistance was necessary. The officers were assigned to conduct a welfare check at the plaintiffs' residence and had reasonable grounds to enter the garage because they knew of Cole's threats to his mother, had some indication that he was mentally unstable, overheard Cole

ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-08-05017 RMW
HH                                                                                           6

making what sounded like threatening remarks over the phone and believed, albeit mistakenly, that Cole could have a shotgun at the residence. Further, the officers were informed that Cole had a gun registered to his name and was taking Xanax for anxiety. No evidence suggests that the entrance was primarily motivated by an intent to arrest and seize evidence, thus the second requirement of the emergency doctrine is also met. The third element is satisfied because the officers had a reasonable basis to enter Cole's garage given that they needed to talk with Cole and he was in the garage. The officers' entry was lawful given Cole's apparent consent and the emergency doctrine, thus the defendants' motion for summary judgment is granted as to the claim that the entry into the garage was unlawful.

### 2. Probable Cause Supported Cole's Detention for Psychiatric Evaluation Under Cal. Welfare & Institutions Code

Cole asserts that his detention pursuant to California Welf. & Inst. Code § 5150 was unlawful. The officers contend that the detention was supported by probable cause.

Officers may take someone under protective custody based on "information from family members and friends, the officers' own observations," and the California Welf. & Inst. Code § 5150. *See Maag v. Wessler*, 960 F.2d 773, 776 (9th Cir. 1991).

The officers had information from Cole's mother that Cole was making threats and she was afraid of him. Officer Rocheville actually heard what was possibly a threat when he had approached the Cole/Oberg residence. Cole's behavior, although not illegal, was strange and uncooperative and the officers knew he was prescribed an anxiety medication. There was also a concern that Cole might possibly have a weapon. The officers had probable cause to take plaintiff into custody under California Code Health and Welfare Code § 5150 for evaluation and possible treatment. Summary judgment is granted in favor of defendants on plaintiff Cole's claim for an unlawful seizure of his person.

### 3. The First Search of the Residence by Officers Rocheville and Cortese Was a Lawful Welfare Check

Plaintiffs assert that the officers' search of the residence was unlawful. The court disagrees. The officers' first search of the residence to conduct a welfare check on the occupants was lawful under the emergency doctrine.

There are two general exceptions to the warrant requirement for home searches: the emergency doctrine and exigent circumstances. *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009). The emergency doctrine requires an objectively reasonable basis to perform a warrantless search. *Id.* The exigent circumstances doctrine requires probable cause as well as a reasonable belief that entry is necessary. *Id.* The Supreme Court has stated that police may enter a home without a warrant in accordance with the emergency doctrine if the officers have "an objectively reasonable basis" to conclude that an emergency is occurring and immediate action is necessary to protect themselves or others from serious, imminent harm. *Brigham City v. Stuart*, 547 U.S. 398, 400 (2006).

As a general rule, the emergency exception stems from the police officers' "community caretaking function and allows them to respond to emergency situations that threaten life or limb." *Dagdagan v. City of Vallejo*, 682 F. Supp. 2d 1100, 1107 (2010). By contrast, the exigency exception derives from the police officers' investigatory function. *Id.* This exception allows officers to enter a home without a warrant if they have both probable cause to believe that "a crime has been or is being committed and a reasonable belief that their entry is necessary to prevent the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *Id.; see Hopkins*, 573 F.3d at 763.

The officers' warrantless entry here was justified under the emergency doctrine because they reasonably believed that someone could be seriously injured or in danger and entry was necessary to assist that person. Cole had threatened his mother, was behaving in an abnormal manner, appeared "to be § 5150," and had a firearm registered to his name. Although Cole's mother said that Cole was only a danger to her but not to his girlfriend and her family, Cole was not cooperating with the officers when asked about Oberg and the children. Given the totality of the facts known to the officers at the scene, they had reasonable cause to be concerned about the welfare of the occupants of the premises, specifically, that Oberg and her children might be in need of immediate attention. Confirming their safety was imperative. The officers' only objective in entering the house was to

ensure the occupants' safety. Applying for a warrant[2] would have delayed entry into the home and unduly increased the risk of harm to the occupants in the house if they needed aid. Thus, the officers' entry to conduct a welfare check was objectively reasonable. The police would be subject to criticism if they had not investigated and Oberg or her children had been injured or otherwise in need of attention. "Erring on the side of caution is exactly what we expect of conscientious police officers." *United States v. Black*, 482 F.3d 1035, 1040 (9th Cir. 2007). Officers Rocheville and Cortes entered the residence to do a welfare check to ensure the well-being of the occupants and not to search in connection with a crime. *Id.* In such situations, we should not second-guess an objectively reasonable decision made by the officers at the scene. *See id.*

The plaintiffs argue that the officers took a more intrusive means of contacting Oberg than required under the circumstances. Plaintiffs assert defendants could have called Oberg on her cell phone as requested by Cole. However, even if it is assumed that the number provided was the correct number, there can no assurance that the suspected victim's responses would have been freely made and not made in fear of retaliation from the potentially unstable Cole. Additionally, just because "protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable." *Cady v. Dombrowski*, 413 U.S. at 433, 447 (1973). Therefore, the officers' first entry into home to conduct a welfare check of any occupants in the residence was lawful and the defendants' motion for summary judgment is granted as to that entry for a welfare check.

### 4. The Search of the Residence for Weapons Was Unlawful and Lt. Hern and Officer Cortese Are Not Protected by Qualified Immunity

Plaintiffs assert that Officer Cortese's later search of the residence for the firearms, which was authorized by Lt. Hern, was unlawful because the officers had no warrant. Defendants respond that under Cal. Welf. and Inst. Code § 8102(a) a reasonable officer could have believed he had a duty to enter the residence to confiscate any weapons. Section 8102(a) at the time provided:

> Whenever a person, who has been detained or apprehended for examination of his or her mental condition . . . is found to own, have in his or her possession or under his or her control, any firearm whatsoever, or any other deadly weapon, the firearm or other

---

[2] A welfare check is not one of the bases authorized by Cal. Penal Code § 1524 for issuance of a warrant.

> deadly weapon shall be confiscated by any law enforcement agency or peace officer, who shall retain custody of the firearm or other deadly weapon.

Cal. Welf. & Inst. Code § 8102(a). However, section 8102(a) says nothing about warrants; it just gives law enforcement officers the power to confiscate weapons possessed or controlled by a person who has been detained for mental evaluation and possible treatment. In fact, at the time of the entry, no statute even provided a constitutionally permissible way for law enforcement to confiscate a firearm or other deadly weapon when it was in the residence of a mentally disordered person who was being detained outside the residence and there was no exigent circumstance or other basis for a warrantless entry into the residence. The lack of a means to obtain a warrant has now been cured by amendment to Cal. Penal Code § 1524(a)(10).

The defendants claim, however, that a reasonable officer could have believed that Cal. Welf. & Inst. Code § 8102(a) gave them permission to search for weapons possessed or controlled by a person detained pursuant to § 5150. "An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment. This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson v. Callahan*, 555 U.S. 223, 243-44 (2009) (internal citations omitted). However, as noted above, § 8102(a) authorized confiscation of weapons but it did not provide a basis for searching a dwelling. At the time of the subject incident Cal. Penal Code § 1524, which listed the bases to obtain a search warrant, did not include, perhaps inadvertently, the situation where a person was taken into custody for a mental examination. A reasonable officer may have assumed he had authority to obtain a warrant. However, there is no legitimate reason an officer would have thought he could enter a residence without a warrant to confiscate a weapon any more than he could have assumed he could enter a residence to confiscate known contraband absent exigent circumstances. Here, Cole was in custody and there was not a risk of his obtaining the weapon and creating a danger.

The court denies defendants' motion for summary judgment asserting that qualified immunity protects the officers from liability for the search of the home for weapons. The fact that the officers earlier may have been performing a community caretaking function cannot alone justify a later intrusion of privacy. *See United States v. Erickson*, 991 F.2d 529, 532 (1993). While the officers

ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-08-05017 RMW
HH                                            10

previously had reasonable cause to do a welfare check under their community caretaking role, re-entering the house later without a warrant or consent from Cole or Oberg after Cole had been detained and the welfare check completed was not permissible under the Fourth Amendment or section 8102.

### 5. The Minimal Force Used to Effectuate Cole's Detention was Reasonable

Plaintiffs assert that the officers' use of force to detain Cole was unreasonable. In response, defendants claim that the use of force was reasonable and no excessive force was used.

The Court held in *Graham v. Connor* that excessive force claims are properly analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than under a substantive due process standard. 490 U.S. 386, 388 (1989). *Id.* at 393-394. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene. *Id.* at 396-97.

Cole reports that he "felt some force on his back" (Cole Depo. 76:22-23) when the police officers started to "restrain or control him" (*id.*) and his "face came into contact with the workbench" (*id.* at 76:22-23). However, Cole admits that he did not get any injuries on his face ("Did you get any injury to your face from coming into contact with the workbench? No." *id.* at 77: 21-22) or get struck in the back when handcuffed ("When you say you felt some force in your back, did anyone strike you in the back? No." *id.* at 76:24-77:1). The force used on Cole was not excessive, he suffered no physical injuries and handcuffing him was a reasonable use of force. The plaintiff has not provided any evidence of excessive use of force, thus the court grants summary judgment for defendants on plaintiff Cole's claim for excessive use of force on his person.

### 6. Oberg was not Detained in Violation of the Fourth Amendment

Plaintiffs assert that Oberg was detained in violation of her Fourth Amendment rights when officers went up to her room while she was asleep and asked to speak with her downstairs.

For police activity to constitute a seizure, the Court held in *Terry v. Ohio* that there must be a show of physical force or other authority. 392 U.S. 1 (1968). In *Florida v. Royer*, the Court stated that the police could approach a suspect in a public place (an airport concourse) and ask him a few questions without violating the Fourth Amendment. 460 U.S. 491 (1983). It is not unreasonable for the police to approach a citizen and ask him a few questions, as long as a reasonable person would feel free to disregard the questions and carry on with his business. *Florida v. Bostick*, 501 U.S. 429,

434 (1991). However, in *Michigan v. Chesternut*, the Court suggested that a seizure occurs whenever a reasonable person does not feel "free to leave" an encounter with the police. 486 U.S. 567 (1988). A seizure occurs only when "police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, at 439.

Although Oberg felt that Officer Rocheville's request to come downstairs was an "order," Officer Rocheville never communicated to Oberg that she was not free to question or disregard his request. Further, Oberg admitted in her deposition that she "voluntarily walk[ed] to the garage to be close to Mr. Cole[.]" Oberg Depo. 98:23-25. Oberg also refused to grant the officers permission to search the attic. Plaintiffs' argument that the officers "directed [Oberg's] every movement" is negated by Oberg's ability to freely move within the residence and refuse the officers' request. Given the evidence which demonstrates that Oberg was "free to leave" the encounter with the officers, the defendants' motion for summary judgment regarding Oberg's detention claim is granted.

### 7. Defendants Are Not Vicariously Liable Under § 1983 and Chief Johnson and Capt. Fitzgerald are not Individually Liable

Plaintiffs assert that Chief Johnson and Captain Fitzgerald are vicariously liable for the Fourth Amendment violations that the officers allegedly committed under § 1983.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). A supervisor is liable for constitutional violations only if the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

The facts establish that Chief Johnson and Captain Fitzgerald did not personally participate in any part of the detention or search and only learned of the incident after the fact. The plaintiffs provide no evidence to support their claim that Chief Johnson and Captain Fitzgerald are vicariously or individually liable under § 1983.

### C. Defendants' Motion to Dismiss Plaintiffs' § 1983 Municipal Liability Claims Against the City Is Premature

Plaintiffs assert *Monell*[3] liability claims against the City of Sunnyvale based on the theories that the City had an unconstituional official policy, that Chief Johnson committed unconstitutional acts as a final policymaker, that the City ratified unconstitutional acts and that the City unconstitutionally failed to adequately train its officers. Plaintiffs object to going forward at this time with the motion as to *Monell* liability on the basis that defendants sought and obtained an order on September 2, 2010 bifurcating the municipal liability claims and staying discovery on those claims. Dck. # 97. Although it appears that plaintiffs may not be able to raise a genuine issue of fact with respect to their *Monell* claims, they have had only limited discovery concerning, for example, whether the City had a policy of searching the residence of a person taken into custody for a section 5150 evaluation regardless of warrant requirements. Defendants' motion for summary judgment on plaintiffs' *Monell* claims is denied without prejudice.

### D. Plaintiffs' State Law False Imprisonment Claim is Unsupported

Plaintiff Cole claims under California state law that he was falsely arrested. However, as discussed above, plaintiff was lawfully detained pursuant to Cal. Welf. & Instit. Code § 5150 for evaluation because probable cause existed given the totality of circumstances. "There shall be no civil liability on the part of … any peace officer … acting within the scope of his or her authority, for false arrest or false imprisonment … [if] [t]he arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful . . ." *O'Toole v. Superior Court*, 140 Cal. App. 4th 488, 511-512 (2006). There was probable cause for taking Cole into custody under § 5150 given Cole's threatening phone calls to his mother, his unexplained disconnected phone calls to 911, his possible threat heard by Officer Rocheville in the driveway to his residence, his possible access to a weapon, the officer's information that Cole was prescribed Xanax and Cole's abnormal behavior when interacting with the officers.

### E. Plaintiffs' Intentional Infliction of Emotional Distress Claims Are Unsupported

Plaintiffs claim that the officers acted with reckless disregard of any concern that plaintiffs would suffer emotional distress during the course of the incident. The elements of the tort of

---

[3] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Davidson v. City of Westminister*, 32 Cal.3d 197, 209 (1982). "Outrageous conduct" has been defined as conduct so extreme as to exceed all bounds of that usually tolerated in a civilized society. *Cervantez v. J. C. Penney Co.,* 24 Cal.3d 579, 593 (1979). The officers' conduct here was not outrageous.

### F.  Plaintiffs' Trespass Claims Are Without Merit Except as to the Entry to Search for Weapons

Plaintiffs claim that the officers trespassed when they initially entered the garage and then when they did a welfare check. Plaintiffs further assert that Officer Cortese's subsequent search for weapons constituted a trespass. As discussed above, entry into the residence for the firearm search was not authorized by Cal. Welf. & Inst. Code § 8102. "Under California law to have a cause of action for trespass a plaintiff must prove: (1) the plaintiff's ownership or control of the property, (2) the defendant's intentional, reckless, or negligent entry on the property, (3) lack of permission to enter the property, or acts in excess of the permission, (4) actual harm, and (5) the defendant's conduct as a substantial factor in causing the harm." *Ralphs Grocery Co. v. United Food and Commercial Workers Union Local 8*, 113 Cal.Rptr.3d 88, 93 (2010).

Here, it is undisputed that plaintiffs owned or controlled the property and that Officer Cortese intentionally entered Cole's house without plaintiffs' permission to search for weapons. Plaintiffs suffered an actual harm of trespass in that their privacy was violated. The search in the house for weapons was not justified under the emergency doctrine exception. There were no exigent circumstances since Cole was in custody. The trespass claim, however, is essentially duplicative of the § 1983 claim for the wrongful search of the premises for weapons.

### G.  Plaintiffs' Claim for a Violation of the Bane Act (Civil Code § 52.1) is Unsupported

Plaintiffs assert that Lt. Hern and Officers Cortese and Rocheville interfered or attempted to interfere with plaintiffs' constitutional rights by threats or intimidation. *See* Cal. Civil Code § 52.1(a) (Bane Act). Plaintiffs assert that they reasonably believed if they exercised their rights

against unreasonable search or seizure or elected to remain silent, the defendants would have committed violence against them or their property.

Cal. Civil Code § 52.1 (b), states that:

> Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured.

Cal. Civil Code § 52.1 authorizes a claim for relief "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." *Jones v. Kmart Corp.*, 17 Cal.4th 329, 331 (1998). "Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing that the speech itself threatens violence against a specific person or group of persons. Cal. Civ. Code § 52.1(j). The person or group against whom the threat is directed must reasonably fear that, because of their speech, "violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat." *Id.* A threat is the "intentional exertion of pressure to make another fearful or apprehensive of injury or harm." *Ex Parte Bell*, 19 Cal.2d 488, 526 (1942). Intimidation occurs when one is made "timid or fearful." *Id.* Because plaintiffs fail to provide evidence to support a claim for a violation of section 52.1, the defendants' motion for summary judgment is granted.

### H. Plaintiffs' Civil Conspiracy Claim is Not a Separate Cause of Action

Plaintiffs assert that the defendants agreed to join in a civil conspiracy to violate the civil rights of the plaintiffs. The elements of a civil conspiracy are "the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994).

Plaintiffs have not provided any evidence that a conspiracy existed among the defendants. Rather, the evidence shows that the officers received all their information and assignments from the Sunnyvale Dispatch and acted accordingly. No "common plan" existed between the officers to constitute a civil conspiracy except as to the agreement between Lt. Hern and Officer Cortese to conduct a search for weapons. However, a civil conspiracy is not a separate cause of action but

rather a legal doctrine that imposes liability on persons who do not commit a tort themselves but share the common plan to do so with another. *Id.* Therefore, defendants' motion for summary judgment on the conspiracy count is granted to the extent that it seeks to assert a separate cause of action, but it is a basis of liability of Lt. Hern for the search for weapons conducted by Officer Cortese.

### I. Plaintiffs' Aiding and Abetting Cause of Action is Viable Only with respect to the Search of the Residence for Weapons

Plaintiffs assert that each defendant knew of the civil rights violations being committed by each other defendant against the plaintiffs and gave substantial assistance. California has adopted the common law rule for subjecting a defendant to liability for aiding and abetting a tort. "Liability may be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 846 (1994). Cal. Civ. Code § 2351 has been uniformly interpreted to exempt superior employees from vicarious liability to third persons for the tortious conduct of subordinates. *Malloy v. Fong*, 37 Cal.2d 356, 379 (1951).

In the present case, the only tortious action was the search by Officer Cortese of the Cole/Oberg residence for weapons on the instruction of Lt. Hern. Plaintiffs present no evidence that any other officer aided or abetted other tortious conduct. Moreover, the "[m]ere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." *Tater-Alexander v. County of Fresno*, 2010 WL 2555185 (E.D. Cal. 2010). Accordingly, defendants' motion is granted on this count except to the extent it makes Lt. Hern responsible for the search for weapons.

### J. Plaintiffs' Negligence Claim is Unsupported

Plaintiffs assert that the defendants were negligent while performing their police functions. Negligence is the failure to exercise the care that a reasonably prudent person would exercise in like circumstances. The conduct of the officers in the instant case was intentional, not negligent. For example, Officer Cortese intentionally performed a search of the residence for firearms, albeit an

unjustified search, but he did not carelessly perform the search. Plaintiffs do not provide evidence to support a negligence claim. Accordingly, defendants' motion for summary judgment is granted on the negligence claim.

### K. Defendants are Immune Under State Law for the Determination to Confine Plaintiff for Mental Evaluation

A detention for mental health evaluation under section 5150 that is supported by probable cause, and thus, in "accordance with the law," is barred from state law torts under Cal. Welf. & Inst. Code § 5278. *Bias v. Moynihan*, 508 F.3d 1212, (2007). The officers did have probable cause to detain Cole as discussed above. Further, Cal. Gov. Code § 856(a)(1) protects public entities and their employees from liability for "any injury resulting from determining in accordance with any applicable enactment . . . [whether] to confine a person for mental illness . . . ." *Johnson v. County of Los Angeles*, 143 Cal. App.3d 298 (1983). The Supreme Court held that the scope of the immunity granted in section 856 (a)(1) "extends not only to the final determination to confine or not to confine the person for mental illness, but to all determinations involved in the process of commitment." *Id.*

Officer Rocheville is immune from liability under California state law for his determination to detain Cole for mental evaluation. *See* Cal. Welf. & Inst. Code § 5278 and Cal. Govt. Code § 856. Defendants are entitled to summary judgment based upon the claim that the decision to confine Cole for mental evaluation was wrongful.

### III. ORDER

For the forgoing reasons, the court orders:

**A.    that defendants' motion for summary judgment:**

    1.    is denied without prejudice on plaintiffs' municipal liability claims (Counts 1-4);

    2.    is granted as to the claim for supervisory liability of Hern under § 1983 for acts of subordinates except that it is denied as to the claim that Hern authorized the search by Cortese for weapons (Count 5);

    3.    is granted as to the Fourth Amendment claim that the entry into the garage and the welfare check conducted by Rocheville and Cortese were unreasonable but denied as to Fourth Amendment claim that the search for weapons was unreasonable (Count 6);

    4.     is granted as to the Fourth Amendment claim that the taking of Cole into custody for a mental evaluation pursuant Cal. Welf. & Inst. Code § 5150 was unreasonable (Count 6);

    5.     is granted as to the false imprisonment claims (Count 7);

    6.     is granted as to the claims for intentional infliction of emotional distress (Count 8);

    7.     is granted as to plaintiffs' trespass claims with the exception that it is denied as to the claim that entry into the residence to search for weapons constituted a trespass (Count 9);

    8.     is granted as to plaintiffs' claim that defendants violated the Bane Act (Count 10);

    9.     is granted as to plaintiffs' claims of civil conspiracy and aiding and abetting except it is denied as to claim that Hern and Cortese conspired to conduct an illegal search for weapons and that Hern aided and abetted Cortese's unlawful search for weapons (Counts 11 and 12); and

    10.    is granted as to plaintiffs' negligence claims (Count 13).

**B.**     **that plaintiffs' motion for partial summary judgment:**

    1.     is granted on plaintiffs' claim that entry into the residence to do a weapons search was unreasonable and that defendants are not entitled to qualified immunity with respect to that search; and

    2.     is denied except as set forth in B.1. above.

**C.**     **that the issues remaining for trial are:**

    1.     whether defendant City of Sunnyvale has *Monell* liability for the search of the Cole/Oberg residence for weapons;

    2.     what damages, if any, plaintiffs suffered from the search of their premises for weapons.

DATED:     9/14/2011

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge